NORMA F. LARSON AND ANOTHER v.
CITY OF MINNEAPOLIS AND OTHERS.
PENN-54th, INC., APPELLANT.

114 N. W. (2d) 68.

March 9, 1962—No. 38,410.

*Freeman, Hoppe & Kennedy* and *Robert J. Healy,* for appellant.
*Ryan, Kain, Mangan, Westphal & Kressel,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment granting the defendant and cross-complainant, Settergren Hardware and Variety, a partnership, indemnity against defendant and cross-complainant, Penn-54th, Inc., which indemnity arose out of a judgment recovered by plaintiffs in a personal injury action against both of the above-named defendants and the city of Minneapolis. The defendant Penn-54th, Inc., is the owner of a shopping center in the city of Minneapolis. Settergren Hardware and Variety is one of its tenants. In the discussion which follows Penn-54th, Inc., will be referred to as the landlord, and Settergren Hardware and Variety will be referred to as the tenant. The landlord appellant asserts that the court erred in granting indemnity in that there is no basis for it in law or in fact.

From the record it appears that Norma F. Larson, one of the plaintiffs, fell over a pipe located in the boulevard in front of the leased premises. The pipe protruded 2 or 3 inches above the ground but was hidden by grass and leaves. The accident occurred on November 11, 1957, 71 days after the tenant took occupancy. The pipe was installed by the landlord. It served to connect the store with the city water system and contained a shutoff valve near the ground level. Ordinarily such pipes are level with the ground, but it appears that this one had protruded above ground level for some time prior to the accident.

The plaintiffs, Mrs. Larson and her husband, started the action against the landlord, the tenant, the city of Minneapolis, and the plumbing contractor who installed the pipe. All of the defendants cross-claimed for indemnity against one another. By stipulation of the parties it was agreed that the issues arising from the cross-claims for indemnity should be determined by the court after the jury verdict. At the close of plaintiffs' evidence the court dismissed the action against the plumbing contractor. After the verdict was returned for plaintiffs, the remaining defendants joined in a motion for judgment notwithstanding or for a new trial, which was denied. The court thereafter considered the parties' cross-claims for indemnity and found that the city of Minneapolis and the landlord had failed to establish their rights to indemnity. He further found that the tenant had established a right

to indemnity as to the landlord but not as to the city of Minneapolis. The landlord appeals from the judgment entered pursuant to the court's findings. No appeal has been taken by the city.

The court adopted the findings of the jury by its verdict to the effect that all three defendants were negligent in the maintenance and care of the pipe located in the boulevard area. The findings recite:

"That as between the parties, the defendant City of Minneapolis was bound under its duty to maintain streets and highways, including sidewalks and boulevards, in a safe condition; that Penn-54th, Inc., the owner of the property, was bound by its ownership to maintain the premises, having installed the pipe and having the duty of maintaining the approaches to its building in a safe condition; that the lessees, defendants Settergren, as to the public, also had the same obligation."

The record does not contain evidence of actual notice to the defendants of the dangerous condition existing on the boulevard. Liability is based upon constructive notice of the condition to the defendants for a sufficient time before the accident occurred to constitute negligence for failure to remove it. The landlord contends that the trial court's finding to the effect that it was under obligation to maintain and repair the boulevard area is contrary to the evidence and the law; that there are no provisions in the lease from which an agreement to indemnify the tenant can be found; and, furthermore, that the lease contains an exculpatory clause by which the tenant has waived indemnity for liability on account of personal injuries to third persons growing out of its occupancy of the premises.

■ It is agreed that the offending pipe was installed in 1950 when the shopping center was built and was owned and paid for by the landlord or its predecessor in interest. When the tenant took possession on September 1, 1957, the pipe was protruding above the ground in the boulevard. The space leased to the tenant was not referred to by legal description in the lease but was identified as "5403-5405-5407 Penn Avenue South." Three other tenants, including a grocery supermarket, conducted their business on the property. The landlord contends that the tenant had equal control and possession with it of the boulevard and was under the same duty and obligation to those

who used that area. It argues that without language in the lease creating the right of indemnity the tenant is not entitled to relief.[1] A helpful memorandum, which is made a part of the court's findings, indicates that all of the landlord's arguments were fully considered and that the court came to the conclusion that there was an implied agreement on the part of the landlord to indemnify the tenant under the circumstances.

The landlord let to the tenant the "premises" described in the lease and agreed "to maintain & keep in repair, the outside of the building and the roof." The tenant, in addition to the payment of rent and other usual conditions, agreed to "keep said premises continually in a neat, clean and respectable condition" and to "keep the sidewalks in front and along said premises cleared of ice and snow, or other obstructions or objectionable thing." The word "premises," the purport

---

[1]The following are the relevant provisions of the lease:

"Lessor herein agrees to maintain & keep in repair, the outside of the building and the roof.

"To HAVE AND TO HOLD, The said premises just as they are without any liability or obligation on the part of said Lessor of making any alterations, improvements or repairs of any kind on or about said premises, for the term of 5 years, from September 1, 1957, * * *.

"That said Lessees will put and keep said premises continually in a neat, clean and respectable condition including the water closets, and will keep the sidewalks in front and along said premises cleared of ice and snow, or other obstructions or objectionable thing, also all ashes, garbage and refuse of any kind to be removed at said Lessee's expense."

The so-called exculpatory clause which the landlord asserts constitutes a waiver of indemnity by the tenant provides:

"The said Lessees agrees that the said Lessor shall not be holden or liable for any loss or damage which may be sustained by the said Lessees or others by the reason of the freezing, bursting, overflowing or defect of any water, sewer, gas or steam pipes, closets, or sinks, in or about said premises or from premises overhead nor for any loss or damage which directly or indirectly may be sustained by water, sewer or gas, nor for the loss or damage caused by water, ice or snow from roof, skylights, trap doors or otherwise, nor for loss or damage by the reason of the present or future condition of repair of said premises or for loss or damage arising from acts or omissions of said Lessees or other tenants or occupiers."

of which is disputed by the parties, may have various legal meanings depending upon context and situation. Under the particular circumstances of this case, we think the trial court correctly construed the term to apply to the space the tenant occupied in the conduct of its business as identified by the street address, with the accompanying obligation to keep the sidewalks in front and along the store space cleared of ice, snow, and other obstructions. The lease makes no reference to the boulevard or other areas used in common by the landlord's tenants and their customers.

Essentially the landlord's claim rests on the proposition that the tenant was also in control of the "premises," which not only includes the specific space leased and sidewalks in front of it but the boulevard as well. This claim might be substantiated if, by a reasonable interpretation, the lease could be construed to mean that the tenant was under obligation to maintain and repair the boulevard. The trial court, however, was persuaded to hold that the boulevard was not included in the term "premises," not only from the language of the instrument itself, which was prepared by the landlord, but by the construction placed upon it by the parties themselves.[2] The testimony relied upon by the court was elicited from one Charles J. Tack, vice president of the landlord corporation. The pertinent portions of his testimony follow:

"Q.   You mention, I believe, that you supervise the properties for the Penn-54th, Inc., is that correct?

"A.   Between myself and John H. Lein.

"Q.   There are other properties that the Leins own separately, in addition to those held by the Penn-54th, Inc., is that correct?

"A.   That's right.

"Q.   And when you supervise them, does that also include checking the premises as to the condition of the premises, that sort of thing?

---

[2]Where the meaning of the contract is doubtful the practical construction which the parties placed upon it will be followed by the courts. Investors Syndicate v. Baskerville Bros. Holding Co. 200 Minn. 461, 468, 274 N. W. 627, 631; Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 354, 98 N. W. (2d) 257, 268; Leslie v. Minneapolis Teachers Retirement Fund Assn. 218 Minn. 369, 374, 16 N. W. (2d) 313, 315.

"A.   Yes.

"Q.   Was that done with the property out on Penn and 54th?

"A.   Periodically, yes.

"Q.   About how frequently would they be checked?

"A.   Well, as I say, we check them—we try to buy things at the shopping center. Lots of times we are over there more often than others. When we are, naturally we woud kind of look around as to the condition of the exterior, the painting and so forth and so on. The interior is more or less left up to the tenants, and we don't do too much with that unless there is specific complaint as to heating and plumbing which we feel is our responsibility.

"Q.   The exterior of the building then—and would that also include the areas immediately surrounding the buildings?

"A.   Yes, I would say so."

From an examination of the record, including the lease, together with the surrounding facts and circumstances, we think the trial court was correct in its conclusion that the landlord failed in its primary obligation to inspect and maintain the boulevard in a reasonably safe condition. We do not agree as the landlord contends that here the right to indemnity must depend for existence upon express contractual provisions. Indemnity may be granted if the facts warrant whether or not specific contractual undertakings exist, this being clearly in accord with the theory that indemnity is essentially an equitable doctrine. Here the landlord installed the pipe in an area used not only by the tenant but by the public, including customers of all of the tenants in the shopping center. The tenant was not aware of the existence of the protruding pipe. It had only occupied the building for a short time prior to the happening of the accident. It cannot be said that the tenant remotely participated either by commission or omission in the existence of the dangerous condition. The foregoing applies with equal force to the landlord's claim that under the terms of the lease the tenant waived its right to indemnity. There is nothing in that provision which would indicate that the tenant released the landlord from liability with reference to accidents resulting from a dangerous condition in the boulevard.

■ The doctrine of indemnity has been discussed at length in two fairly recent decisions of this court. Hanson v. Bailey, 249 Minn. 495, 83 N. W. (2d) 252; Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. (2d) 843. In the latter case we outlined a general classification of situations where indemnity might be allowed. We recognize that indemnity is essentially an equitable doctrine which does not lend itself to hard-and-fast rules. Being an equitable doctrine, its application is particularly appropriate in a case such as this where it is invoked to protect one who is legally liable but morally innocent against one whose wrongful conduct or omission has caused liability to be imposed on him. In Fidelity & Cas. Co. v. Northwestern Tel. Exch. Co. 140 Minn. 229, 231, 167 N. W. 800, 801, we expressed the rule as follows:

"Generally, one of two joint tort-feasors cannot have contribution from the other. But there are exceptions to this rule. One exception arises where although both parties are at fault and both liable to the person injured, yet they are not in pari delicto as to each other, as where the injury results from a violation by one of a duty which he owes to the other, so that, as between themselves, the act or omission of the one from whom indemnity is sought is the primary cause of the injury."

See, also, City of Wabasha v. Southworth, 54 Minn. 79, 55 N. W. 818; Olson v. Schultz, 67 Minn. 494, 70 N. W. 779, 36 L. R. A. 790; Dehn v. S. Brand Coal & Oil Co. 241 Minn. 237, 63 N. W. (2d) 6; Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N. W. 698; Chicago G. W. Ry. Co. v. Casura (8 Cir.) 234 F. (2d) 441; Kahler v. Liberty Mutual Ins. Co. (8 Cir.) 204 F. (2d) 804; Waylander-Peterson Co. v. G. N. Ry. Co. (8 Cir.) 201 F. (2d) 408.[3]

---

[3]The New York authorities seem to indicate that the doctrine of indemnity may be applied in circumstances where there is such a factual disparity between the delinquency of one tortfeasor and the delinquency of another as to characterize one's wrongdoing as "passive" and the other "active" or the breach of duty as "primary" and "secondary." 25 N. Y. U. L. Rev. 858; Tipaldi v. Riverside Memorial Chapel, Inc. 273 App. Div. 414, 78 N. Y. S. (2d) 12, affirmed, 298 N. Y. 686, 82 N. E. (2d) 585; Schwartz v. Merola Bros. Const. Corp. 290 N. Y. 145, 48 N. E. (2d)

We conclude that in its determination as to who in fairness and equity was at fault under the particular circumstances of this case the trial court was correct in holding that the landlord has the primary obligation of inspecting and maintaining the boulevard and that his failure to do so resulted in the obligation imposed upon the tenant. Accordingly, the tenant was entitled to judgment over and against the landlord.

Affirmed.

MR. JUSTICE ROGOSHESKE, not being a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

299; Dolnick v. Edward Donner Lbr. Corp. 275 App. Div. 954, 89 N. Y. S. (2d) 783, affirmed, 300 N. Y. 660, 91 N. E. (2d) 322; Scott v. Curtis, 195 N. Y. 424, 88 N. E. 794.