ROTH, Respondent v. JELDEN et al., Appellants

(118 N.W.2d 20)

(File No. 9967. Opinion filed November 23, 1962)

42

**Fellows, Fellows & Tinan,** Mitchell, **Woods, Fuller, Shultz & Smith, J. B. Shultz,** Sioux Falls, for Defendants and Appellants.

**Francis L. Burns,** Sioux Falls, **Shandorf & Slocum,** Mitchell, for Plaintiff and Respondent.

RENTTO, P. J. This litigation grows out of a nocturnal intersectional collision of two automobiles. The jury awarded plaintiff $63,000 for personal injuries suffered by him. Judgment in this amount was entered against each of the defendants. The Westside Implement Company moved for judgment notwithstanding the verdict which was denied and both defendants moved for a new trial. These were also denied but on condition that plaintiff consent to a reduction of the verdict by $13,000. Upon plaintiff's acceptance of the reduction, judgment was entered for $50,000. Defendants appeal therefrom.

The Westside Implement Company is a partnership composed of the defendant Winfred Jelden and Edwin Wilson engaged in retailing farm machinery with its place of business at Mitchell, South Dakota. Jelden was the general manager actively in charge of its operation doing most of the buying and selling. Wilson had other employment and worked in the partnership business only occasionally.

On March 19, 1959, the date of the accident, Jelden left the partnership place of business at about 5 p.m. to call on a farmer living about 8 miles northwest of Yankton for the purpose of selling him some machinery. This customer had recently been at the partnership place of business and apparently evidenced an interest in buying some items handled by it. His mission resulted in the sale of two new tractors and two plows. On this trip Jelden drove his own 1954 Oldsmobile. From Mitchell he traveled south on Highway 37 to its juncture with Highway 50 about 17 miles south of Tripp, South Dakota, and then on Highway 50 to the farm.

Highway 37 in the vicinity of Tripp runs generally north and south a short distance west of the town. Jelden traveled that route on his way to the farm. This portion of the road is referred to as new 37 to distinguish it from old 37 which runs through the town along its Main street. In other words, Highway 37 as relocated bypasses the town to the west. In returning from the farm on his way to Mitchell, Jelden left Highway 37 and drove into Tripp along old 37 from the south to see some friends who had recently had a death in their family.

After calling on his friends and visiting the funeral parlors he resumed his journey to Mitchell. He drove out of Tripp on old 37 which, after it leaves the town, runs in a northwesterly direction. About one-half mile north of Tripp it intersects U.S. Highway 18, an arterial highway, which runs east and west. At that intersection the collision in issue occurred at about 10:30 p. m. Jelden entered the intersection without stopping and ran into plaintiff's 1953 Chevrolet driven by him, in which he and his family were proceeding westerly on Highway 18. Old 37 continues on northwesterly from the intersection and junctures with new 37. By taking this route through Tripp on old 37 Jelden had to drive one mile more than he would have if he had remained on new 37.

The partnership contended that this deviation took Jelden outside the scope of his employment relieving it of liability for his actions during that period. In ruling on the partnership's motion for a directed verdict on this ground and in its instructions to the jury the trial court utilized the rule on deviations that applies when the relationship is that of principal and agent. The instruction given was 54-L, California Jury Instructions—Civil, 4th Ed. The partnership did not question the statement of the rule but urged that it should not be applied to a partnership situation because partners do not have the same degree of control of each other that a principal has of its agent.

■ ■ With us the legal relationship between a partnership and the partners is that of principal and agent. It is made so by statute. SDC 49.0301(1) provides in part that: "Every partner is an agent of the partnership for the purpose of its business." Moreover, by SDC 49.0104(3) the law of agency is made a part of the law of partnership. Snell v. Watts, 77 S.D. 534, 95 N.W.2d 453. Accordingly the question of whether a partner by deviation has gone sufficiently beyond the scope of his employment to relieve the partnership of liability must be determined under the rules of the law of agency.

Both defendants urge that the court erred in restricting their direct examination of Jelden and their cross-examination of the

plaintiff. They claim that the attempted examination of Jelden would have excused his failure to observe the stop sign by showing that his conduct under the circumstances was that of a reasonably prudent person.

Jelden's testimony was to the effect that he did not see the stop sign at the intersection until after the accident. It was located near the intersection on the south side of Highway 18 facing south and to the east of old 37 which approaches the intersection from the southeast. They suggest that because it faced south rather than southeast it was not readily visible to a motorist proceeding toward it on old 37. After the accident another stop sign was placed on the opposite side of the highway facing in a southeasterly direction. They attempted and offered to introduce evidence to the effect that he had worked in the area of Tripp and was familiar with this intersection before new 37 was built. At that time old 37 was the arterial highway. This was his first occasion to go over the highway since 37 had been relocated and he was not aware of the change made in the arterial designation.

■■ In support of their position the defendants relied on Hullander v. McIntyre, 78 S.D. 453, 104 N.W. 2d 40, wherein this court followed its holding in Frager v. Tomlinson, 74 S.D. 607, 57 N.W. 2d 618, that the violation of a standard of duty fixed by a safety statute is only prima facie evidence of negligence which may be overcome by a showing of due care. Whether this contention is valid we need not determine because we have recently receded from that view. In Albers v. Ottenbacher, 79 S.D. 637, 116 N.W.2d 529, we specifically disapproved and overruled such holding. The Albers case enumerates four categories of excusable violators of traffic regulation. These are:

"(1) anything that would make compliance with the statute impossible; (2) anything over which the driver has no control which places his car in a position violative of the statute; (3) an emergency not of the driver's own making by reason of which he fails to observe the statute; and (4) an excuse specifically provided by statute."

Defendants' offered evidence viewed most favorably to them is, as a matter of law, insufficient to legally excuse Jelden's failure to heed the stop sign. Accordingly it was inadmissible.

■ On cross-examination of the plaintiff, defendants attempted to show that he knew of the change made in the stop signs at the intersection and also knew that on occasions vehicles did go through stop signs resulting in accidents. They claimed that they should have been permitted to show this because the jury could find that with such knowledge, the plaintiff should have realized that there was greater danger of the stop signs being ignored at this intersection than in the ordinary situation. Such circumstances, they argue, required of him a higher degree of care than would normally be the case.

■ A motorist on a through highway has a right to assume that cross traffic will come to a stop before entering or crossing such highway. Nevertheless, the favored traveler is required to make timely observation of the cross road for oncoming traffic. However, he may rely on the assumption that the drivers of vehicles approaching an intersection so protected will heed the stop sign until he, as a reasonable man, should recognize that the situation is otherwise. Robertson v. Hennrich, 72 S.D. 37, 29 N.W.2d 329; Grosz v. Groth, 78 S.D. 379, 102 N.W.2d 834. To adopt defendants' contention would deprive the traveler on such highway of this right and tend to defeat the purpose of the Legislature in providing for arterial highways. Consequently the attempted cross-examination was improper.

■ In Instructions 3 and 5 the jury were advised of the rights and duties of one on a favored highway. Defendants excepted to these and proposed three of their own which were refused. We have carefully gone over all of these. The instructions given, we think, were proper and sufficient and included the substance of the rules of law set out in those requested. The principal difference between the instructions given and those requested was largely a matter of language. In characterizing the duty of the traveler on the favored highway the requests said he may not "throw care to the winds" and "he was not entitled to rely blindly on that assumption."

██ These phrases appear in the opinions of this court in the Robertson and Grosz cases but that fact does not require their use in the instructions in this case. In such opinions these phrases are used as argument or illustration applying to the facts of those cases which differ materially from the factual situation here involved. See comment and cases cited in California Jury Instructions—Civil, 4th Ed., Vol. I at p. 17. Since court opinions must be read in the light of the facts of the case involved it is not always necessary or proper to use expressions from an opinion in instructions.

Entering the intersection the traveled portion of Highway 18 is 45 feet wide and old 37 is 30 feet wide. Both are surfaced with blocktop paving which was dry. While the night was dark the atmosphere was clear. The area around the intersection is fairly level. There was a Dairy Queen building and an adjacent shed near the intersection south of 18 and east of old 37. Except when these were in his line of sight a westbound traveler on 18 could observe travel on old 37 south of the intersection. The plats in evidence indicate these two structures did not obstruct his view of traffic approaching the intersection from the south on old 37 after he got to a point approximately 250 feet east of the intersection. At that point he could see such traffic for about 250 feet south of the intersection.

Plaintiff had driven the route before and knew it was an arterial highway. In approaching the intersection from the east he was traveling about 55 miles per hour with his lights on. When he was at a point which the plats indicate to be roughly 200 feet east of the intersection he saw the lights of a car approaching from the south, but could not estimate its speed or its distance from the intersection, except that it was south of him and slightly to the west. He didn't look that way again until he was four car lengths east of the point of collision at which time it was still south of the stop sign but how far south he could not say. It kept on coming as plaintiff was entering the intersection. He was afraid there would be a collision but it was then too late for him to do anything to avoid it, so he did not apply his brakes, attempt to swerve his car or take his foot off the gas pedal.

The front portion of the car from the south, which was the

one Jelden was driving, struck plaintiff's car on the left side in the area of the rear wheel. The point of impact was a little over 5 feet north of the center line of Highway 18 and east of the center line of old 37, in the line of traffic of a vehicle proceeding north, about 141 feet from the stop sign which Jelden ignored. The sign was reflectorized and there was evidence that it could be seen at night by a motorist going north with his lights on. Jelden said he was going about 50 or 55 miles per hour with his lights on and first saw plaintiff's car when it was directly in front of him between 20 and 30 feet away.

■ Both defendants moved for a directed verdict on the ground that plaintiff as a matter of law was guilty of contributory negligence more than slight. We think the denial of these motions was proper. On this evidence it was for the jury to say whether plaintiff exercised the required care in observing Jelden's car as it approached the intersection, and whether in the exercise of due care he should have realized before he did that Jelden was not going to stop for the sign. If they found plaintiff to be negligent in either regard they could properly find that it was only slight.

■ The defendants also contend that the judgment should be reversed for misconduct by one of the plaintiff's counsel in his closing arguments to the jury. This was one of their grounds for a new trial and affidavits concerning the incident by the four counsel engaged in the trial were submitted and are a part of the record. Defendants claim that this counsel asked the jury to give the plaintiff such damages as "they would want if they were in his position." It is settled in this state that such argument is improper. Cooper v. Holscher, 60 S.D. 83, 243 N.W. 739. However, the basic question here is whether counsel made such statement.

■ ■ The closing argument in question does not appear in the reporter's transcript of the trial. Affidavits for the defendants state that he made the claimed remark. Those for the plaintiff deny it. This made an issue of fact as to whether it was said or not. The trial court resolved this dispute against the allegations in defendants' affidavits. Whaley v. Vidal, 27

S.D. 642, 132 N.W. 248. We are not persuaded that this finding of the trial court should be disturbed.

In ordering a remittitur the trial court recognized that the verdict was influenced by passion and prejudice. The defendants contend that such being the case the trial court should have granted them a new trial rather than order a remittitur. They argue that a new trial is necessary to remove the taint in the verdict occasioned by this attitude of the jury. Their position is that a reduction of the amount awarded does not restore fairness to the trial.

The power of the court in this regard, with citation of our earlier cases, is discussed in Miles v. Fall River County, 50 S.D. 240, 209 N.W. 360, and in Kunz v. Johnson, 74 S.D. 577, 57 N.W.2d 116. The Kunz case construed the Miles case as holding by implication "that it rests within the power of a trial court, in the exercise of its broad discretion, to deny a new trial on condition that plaintiff consent to a remittitur." However, the case goes on to impose a limitation on the exercise of such power. It is there written "when it is clear that the verdict is influenced by passion and prejudice, we think a remittitur can be justified only by exceptional circumstances." In that case this court held that the jury's feeling toward the defendant was such that it was unable to deal impartially with any branch of the case requiring a new trial rather than a remittitur to remove the effect of the passion and prejudice.

However, that does not seem to be the situation in this case. Here it is obvious the trial judge was of the view that the effect of the passion and prejudice of the jury was limited to the issue of damages. The correctness of his view is clearly supported by the record. In this situation we think a remittitur is justified. In 39 Am.Jur., New Trial, § 214, we find this statement:

"While it has been held that a new trial, and not a remission of the excess, should be ordered where the verdict shows that the jury were infuenced by passion or prejudice, some of the cases hold that in this situation, a remittitur is proper practice unless it appears

that the influence of passion or prejudice affected the decision of the jury upon the merits."

The opinion in the Kunz case seems to suggest this exception. See also 53 A.L.R. 791; 66 C.J.S. New Trial § 209d.

 In determining whether a new trial should be granted on this ground or only a remittitur the trial court is vested with judicial discretion. When he has concluded that a remittitur is proper the amount thereof is also a discretionary matter, especially so when the evidence as to plaintiff's injuries is conflicting as it is here. In considering damage awards for personal injuries each case must depend on its own facts. Consequently comparison of verdicts is not a satisfactory method of determining whether a particular award is excessive. The record does not reveal any abuse of discretion by the trial court in ordering a remittitur or in fixing the amount thereof.

The other matters assigned and argued by the defendants have been considered but we are unable to discern in them any prejudicial error.

Affirmed.

All the Judges concur.