DEGEN, Respondent v. BAYMAN, Respondent and OUTBOARD MARINE CORP., Appellant

(200 N.W.2d 134)

(File No. 10888. Opinion filed August 10, 1972)

Rehearing denied September 6, 1972.

**George Beal Law Offices,** Rapid City, for defendant and third party defendant and appellant.

**Hanley, Wallahan, Driscoll & Murray,** Rapid City, for plaintiff and respondent.

**Costello, Porter, Hill, Banks & Nelson,** Rapid City, for defendant and third party plaintiff and respondent.

FOSHEIM, Circuit Judge.

On July 28, 1968, the families of a Little League Baseball team were engaged in an outing at Sheridan Lake in Pennington County. The recreation included waterskiing. One of the boats involved was a 1968 - 210 h. p. inboard-outboard manufactured by the defendant Outboard Marine Corp., operated by the defendant Donald Bayman and owned by his employer. Bayman had operated the boat at least twice before that date. He also had been driving it for some time the day of the accident. It used an automatic, push-button, electric transmission control which was mounted in connection with a throttle control lever on the right side of the boat. The shift positions were "Forward", "Neutral" and "Reverse". The boat came to a stop some distance from shore in deep water. William J. Degen, one of the ball players, then fourteen years of age, swam out to the boat to water-ski. He positioned himself 14' to 45' directly behind the boat. It was then discovered that this boat had no towrope, and Bayman prepared to move out.

He asked young Degen if he was "out of the road" or "clear of the prop". Billy answered that he was all right if the boat didn't back up. Without checking to see whether the gears were engaged, Bayman started the engine. The boat paused and then went backward. While it was moving a passenger in the boat shouted at least twice not to back up. However, Bayman did not turn off the ignition or shift from reverse until the boat had passed over Degen. The propeller caused severe injury to Billy's legs.

Bayman did not recall whether the boat was in gear when he started the engine or if he inadvertently shifted into reverse. He did not know the boat was designed to start in gear as well as neutral. There was no evidence of any malfunction.

During the summer of 1966, while the defendant Outboard Marine was finalizing the engineering and design of its 1968 models, it concluded the design unsafe which permitted this powerful motor to be started while the transmission was in gear and the throttle open. This was about one year before the 1968 model boats were put into production. Notwithstanding this recognition, Outboard Marine did not change the design and proceeded to manufacture and market the 1968 models. Minor changes would have assured the motor starting only while in neutral gear. The operator's manual was printed after the company had concluded the design was not advisable for safety reasons. However, the manual gave no warning of this hazard. Likewise, no warnings to dealers or call-backs were issued. "Caution" plates or decals were affixed at conspicuous places as to other hazards, but none concerning the danger of starting the boat in gear, particularly with the throttle open.[1]

Over the objection of defendant Outboard Marine, the trial court submitted the issue of indemnity to the jury. The jury returned a substantial verdict in favor of plaintiff and against both defendants. They also found the defendant Bayman was entitled to be indemnified by the defendant Outboard for all damages. Outboard claims Bayman was not entitled to indemnity as a matter of law and that its motion to dismiss Bayman's claim therefore should have been granted.

 Contribution and indemnity are remedies to secure restitution. Although similar in nature and having a common basis in equitable principles, they differ in the kind and measure of relief provided. Contribution requires the parties to share the liability or burden, whereas indemnity requires one part to reimburse the other entirely.[2] Contribution is appropriate where there is a common liability among the parties, whereas indemnity is proper where one party has a greater liability or duty which justly requires him to bear the whole of the burden as between the

---

1. As to the responsibility of a manufacturer to warn of a known danger, see Restatement of Law of Torts 2d § 388-394.

2. See "Commissioners' Note," 9 Uniform Laws Annotated, Section 2 of the Uniform Contribution Among Tortfeasors Act. (SDCL 15-8-15). Its adoption permits apportionment of liability between joint tortfeasors where there is a disproportion of fault.

parties. Hendrickson v. Minnesota Power & Light Company, 258 Minn. 368, 104 N.W.2d 843. The principle of indemnity is expressed in 41 Am.Jur.2d, Indemnity, § 20:

> "Accordingly, it is generally held that a person who, without fault on his own part, has been compelled to pay damages is entitled to recover indemnity where, as between the parties to the indemnity action, the defendant is primarily liable[3] while the plaintiff is only secondarily liable — that is, where the plaintiff is only technically or constructively liable to the injured party, or where his liability was based on a legal or contractual relationship with the defendant. In other words, a joint tortfeasor may recover indemnity where he has only an imputed or vicarious liability for damage caused by the other tortfeasor."[4]

Also see Annotation 88 A.L.R.2d 1356 § 2, and Larson v. City of Minneapolis, 262 Minn. 142, 114 N.W.2d 68.

In Millard v. Baker, 76 S.D. 529, 81 N.W.2d 892, Judge Rudolph writing for this Court said:

> "The rule is set forth in Restatement, Restitution, Sec. 96, as follows: 'A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.' In Comment 'a' to said Sec. 96, it is stated that the rule applies where by statute the owner of a motor vehicle, without fault, is made liable for the negligence of another who drives the motor vehicle with the owner's permission."

And in 42 C.J.S. Indemnity § 21, p. 598, it is stated,

---

3. The courts have differentiated between so-called primary from secondary liability, active from passive negligence and vicarious liability from liability arising out of one's personal fault. General Accident Fire and Life Assurance Corporation, 14 Wis.2d 1, 109 N.W.2d 462.

4. Prosser, Law of Torts 2d Ed. 250.

" * * * the owner of a motor vehicle who has been subjected to liability to a person injured through its operation, under a statute imposing such liability by virtue of his ownership, is, although the statute does not so provide, entitled to be indemnified by the wrongdoer."

■ Thus, a joint tortfeasor is without personal fault when he has not participated in the commission of the tort and his liability arises by operation of law. Pelkey v. State Sales, Inc., D.C.Mich., 210 F. Supp. 924.

As applied to product liability, see Annotation 28 A.L.R.3d 946.

■ Conversely, before a joint tortfeasor can shift one hundred percent of the recovery upon another joint tortfeasor, he must show a proportionate absence of contributing negligence on his part.

■ It is generally held that where joint tortfeasors are in pari delicto — that is, where each is chargeable with active or affirmative negligence contributing to the injury, neither is entitled to indemnity from the other although contribution may be available. 41 Am.Jur.2d, Indemnity, § 21.

■ An act of omission as well as one of commission on the part of a joint tortfeasor contributing to the injury may constitute active negligence precluding his recovery of indemnity where he is under an affirmative duty to act. Bernstein v. ElMar Painting & Decorating Co., 13 N.Y.2d 1053, 245 N.Y.S.2d 772, 195 N.E.2d 456, and 41 Am.Jur.2d, Indemnity, § 21.

■ If a person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act of omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he has undertaken, he is deprived of the right of indemnity. Cahill Brothers, Inc. v. Clementina Company, 208 Cal.App.2d 367, 25 Cal.Rptr. 301; Pearson Ford Company v. Ford Motor Company, 273 Cal.App.2d 269, 78 Cal.Rptr. 279.

In South Austin Drive-In Theatre v. Thomison, Tex.Civ.App., 421 S.W.2d 933, 28 A.L.R.3d 911, the leg of a six-year-old boy was severed by the rotary blade of a riding power mower. An employee of the theatre was operating the mower when the injury occurred. The operator was found negligent for failing to exercise due care in controlling the power mower, knowing that another person, in this instance a small child, was present and in the immediate vicinity of the machine. He stopped the mower and without looking backward reversed the machine, thereby causing the mower to collide with the child. The manufacturer of the machine was found negligent in design. It was manufactured for use by families in recreation areas and public parks. A guard or bumper affixed to the machine at the rear would have given protection when the machine was in reverse. The court pointed out that both tortfeasors might have prevented the injury. Both violated a duty of due care owed the injured party and, therefore, each was guilty of the same quality of negligence. The negligent conduct of each was a proximate cause of the injury. Indemnity was denied. For similar decisions see Halligan v. Shulman, 31 Ill.App. 2d 168, 175 N.E.2d 590; Delta Engineering Corp. v. Scott, 5 Cir., 322 F.2d 11, cert. den. 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176, and VanderVeer v. Tyrrell, 27 A.D.2d 958, 278 N.Y.S.2d 916.

▆ Viewed most favorably, Bayman's conduct consisted of not less than acts of omission in his duty to plaintiff which contributed to the proximate cause of the injury. His negligence was more than passive or vicarious. Being in pari delicto, he was in no position to shift the entire liability to Outboard Marine. Indemnity was not an issue and the trial court should have dismissed Bayman's claim therefor.

Having reached this conclusion, the record could ordinarily be remanded with instructions to amend the judgment accordingly. However, further assignments require our consideration.

At a pretrial conference, the court directed that no mention be made during the trial of any settlement that might be effected with any party. During the trial and before arguments to the jury, plaintiff and the defendant Bayman, with the knowledge of the court, entered into a settlement. The agreement provided for the

release of Bayman upon payment of $65,000. Under the release and instructions, he could recover his payment by indemnification from Outboard. To accomplish this, it was necessary to persuade the jury that plaintiff was entitled to recover at least $65,000 damages and that Outboard was primarily liable. Plaintiff and Bayman thus shared a mutual interest adverse to Outboard. This, of course, opened attractive opportunities to cross-examine friendly witnesses.[5] The lawsuit was reduced to Outboard defending against the separate causes of action of plaintiff for tort liability and Bayman for indemnity. Weeg v. Iowa Mutual Insurance Company, 82 S.D. 104, 141 N.W.2d 913.

Whether evidence of a release or covenant not to sue should be admitted to the jury and if admitted whether the allowance of credit should be made by the court or jury is unsettled.[6]

The Uniform Contribution Among Tortfeasors Act is intended to encourage settlements without prejudice to the parties. When a release or covenant is received in evidence, it can raise collateral issues jeopardizing plaintiff. Cartmel v. Williams, 207 Pa.Super. 144, 215 A.2d 282. If it shows a nominal or "nuisance" settlement with one tortfeasor, it can be used by a joint tortfeasor to downgrade a plaintiff's claim. If it reveals a substantial payment, the nonsettling tortfeasors would likely urge it as proof that the releasee was the party responsible for the injury, had paid the damages, and that they should be exculpated. DeLude v. Rimek, 351 Ill.App. 466, 115 N.E.2d 561. This would tend to discourage settlements.

In Bender v. Wallace-Murray Company, 8 Cir., 432 F.2d 50, the trial court instructed the jury that the issue of liability before them concerned only the defendant Wallace-Murray since the plaintiff had settled with the other defendants during the trial and executed releases under the South Dakota Uniform Contribution

---

5. The decision in Lum v. Stinnett, Nev., 488 P.2d 347, is articulate concerning an agreement resulting in collusion inimical to the adversary process.

6. See Annotation 94 A.L.R. 2d 360.

Among Tortfeasors Act. The amount of the settlement apparently was not revealed to the jury. On appeal, the United States Court of Appeals found no error.[7]

■ We can visualize no circumstances where the amount involved in a release or covenant need be disclosed to the jury.[8] Whether the jury should know that a settlement has been reached between some parties should be left to the discretion of the trial court, and not be disturbed unless it clearly appears that a fair trial has been jeopardized.

Counsel for plaintiff argued that Outboard was about 99% responsible for the accident.

Armed with the court's protective order, a release from plaintiff and an instruction allowing indemnity, counsel for Bayman addressed the jury as follows:

"The fact of damage in this case is, of course, literally beyond dispute. I know, as I'm sure you do from having listened to him testify, Don Bayman's feelings about what happened to Billy Degen. I know that from any point of view, even having in mind what was sued for here, I wouldn't put my sixteen-year-old through what Billy Degen has been put through here for that amount of money."

We need not comment on the impropriety of argument suggesting consideration of damages other than on the issues in evidence, Cooper v. Holscher, 60 S.D. 83, 243 N.W. 739; Roth v. Jelden, 80 S.D. 40, 118 N.W.2d 20.

Over objection, Bayman's counsel continued:

---

7. Since the jury found for the remaining defendant on the issue of liability, the court did not decide whether the jury should have been allowed to pass on the liability of the released defendants as affecting pro rata contribution by the remaining defendant.

8. This, of course, means allowance of credit resulting from a release, or covenant not to sue, is made by the court. We so indicated in Heidemann v. Rohl, 86 S.D. 250, 194 N.W.2d 164.

"I have no doubt, ladies and gentlemen, that in this case you're going to give Billy Degen a verdict and believe me, in this argument and particularly in a case like this, I think the attorneys have a real responsibility to be candid with the jury, and I'm trying to be with you because this is a very serious case.

There isn't any doubt in my mind but what you're going to give Billy Degen a verdict. There isn't any doubt in my mind that it's going to be a substantial one."

Not knowing the motive for the evaporation of adversary vigor between plaintiff and Bayman, this benevolent candor coming from a joint tortfeasor could only appear to the jury as a shattering admission.

■ The protective order was a proper exercise of discretion. However, the responsibility to assure a fair trial is continuous. The court should not have allowed it to be used as a collusive advantage. When that appeared, a limited rescission was necessary to let the adversary process put the issues in perspective.

We have reviewed the remaining assignments of error and conclude they are either without significant merit or are disposed of by the result we have reached.

Reversed.

HANSON, P. J., and WINANS and WOLLMAN, JJ., concur.

BIEGELMEIER, J. dissents.

FOSHEIM, Circuit Judge, sitting for DOYLE, J., disqualified.

BIEGELMEIER, Judge (dissenting).

When the proposed opinion was circulated my efforts resulted in a research paper of considerable length. It did not receive favor with the other members of the court. With an extended trial

of involved and intricate issues covering more than a thousand pages of evidence, over 45 assignments of error and nearly 300 pages of briefs (by special permission) to consider, it is difficult to compress reasons that will cover the problems involved.

I. As I read the opinion, the court states **one** of the principles of law where indemnity is allowed — that of the active-passive negligence situation, referred to in 41 Am.Jur.2d, Indemnity, §§ 20 and 21 — and then applies it to this appeal without regard to the **other** and additional situations where indemnity is allowed. These other and additional situations are also stated in the same text and sections (41 Am.Jur.2d, Indemnity, §§ 20 and 21) and, indeed, even in the Minnesota Hendrickson and the Wisconsin Jacobs opinions all cited and relied on in the majority opinion. I believe indemnity can be sustained by principles there stated and hereafter quoted, and that indemnity can be allowed if a party comes within any one of the situations stated.

There is no dispute that some of the authorities quoted are in accord with Millard v. Baker, 76 S.D. 529, 81 N.W.2d 892, but those issues are not involved in this appeal. What is involved is whether Bayman should have discovered the dangerous defect O.M.C. had built into the starting mechanism that permitted the motor to be started while the propeller was engaged in forward or reverse. That was a question for the jury and is governed by the following statement in 41 Am.Jur.2d, Indemnity, § 20, partially quoted by the court:

"Similarly, indemnity will be granted where the indemnitee (Bayman) has incurred liability to a third person (Degan) by reason of negligent reliance upon the care which the indemnitor (O.M.C.), as a supplier of goods or contractor making repair and improvements, should have exercised, **or** where the one seeking indemnity (Bayman) has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged." (emphasis supplied.)

Restatement of the Law, Restitution, § 93, similarly declares:

"(1) Where a person has supplied to another a chattel which because of the supplier's negligence or other fault is dangerously defective for the use for which it is supplied and both have become liable in tort to a third person injured by such use, the supplier is under a duty to indemnify the other for expenditures properly made in discharge of the claim of the third person, if the other used or disposed of the chattel in reliance upon the supplier's care and if, as between the two, such reliance was justifiable * * *".

The Minnesota and Wisconsin opinions, supra, indicate indemnity and contribution have developed there by court decisions as equitable doctrines. Yet, the Minnesota Hendrickson opinion states that of several situations where indemnity is allowed, one is when the indemnitee has incurred liability.

"(4) * * * because of failure, even though negligent, to discover or prevent the misconduct * * *."

Even assuming the active-passive situation is here presented, Pearson Ford Company v. Ford Motor Company, 273 Cal.App.2d 269, 78 Cal.Rptr. 279, cited in the majority opinion, declares the guide for which I contend. In that case there was a defect in the brake, caused by omitting to put in a pin, which resulted in damage to plaintiff. She recovered a $150,000 judgment against both the dealer and the manufacturer, and the dealer was allowed indemnity against the manufacturer. While the court reversed because of an error in instructions, it said that the law of active-passive negligence applied, and, if active, it would bar recovery of indemnity of the dealer against the manufacturer. It then wrote:

"Pearson's failure to discover the defect would be 'active negligence,' if, under all the circumstances and in the exercise of ordinary care, it should have made that discovery. * * *

"Ford earnestly contends on appeal that Pearson's participation in the events leading to the accident is such as to preclude its right to indemnification as a matter of

law. We disagree with this contention. No contention is made, nor would the record support a finding that Pearson's employees had actual notice or knowledge of the defect. The defect itself was extremely unusual, and reasonable minds could differ whether under the evidence and the applicable law Pearson's employees should have discovered it."

The action was sent back for the trial on that issue and is authority for submitting that question in this case at bar to a jury, its verdict being final. Accord: Otis Elevator Co. v. Cameron, Tex.Civ.App., 205 S.W. 852, where the court held Otis, the manufacturer of a defective elevator, "was the original and active perpetrator of the wrong for which R. L. Cameron was held responsible * * * and that the negligence of * * * Cameron * * * was only passive."

In VanderVeer v. Tyrrell, 27 A.D.2d 958, 278 N.Y.S.2d 916, cited in the opinion, appears this statement of an operator's (Bayman's) duty:

"a person briefly using a rental golf cart (has no) duty to inspect its internal mechanism, as to which he is, more often than not, neither possessed of, nor reasonably expected to be possessed of, expertise in any particular degree."

II. While holding the protective order was proper, the opinion quotes part of the argument of counsel for defendant Bayman. Granting this statement bordered on impropriety, it was not of the degree disapproved in Cooper v. Holscher, 60 S.D. 83, 243 N.W. 739, where the court over objection commented the argument was proper and told counsel to " 'Proceed' ". The jurors were not misled by the tactics of Bayman's counsel; they knew Bayman and O. M. C. were opposing parties and adversaries because Bayman was asking for and the jury awarded a verdict against O. M. C. To set aside the verdict of **plaintiff** by reason of an argument of a **co-defendant** does not seem justified. In affirming

an order denying a new trial on a claim of passion and prejudice, the court in Roth v. Jelden, 80 S.D. 40, 118 N.W.2d 20, said "the trial court is vested with a judicial discretion".

III. Even under the court's opinion that the verdict and judgment of Bayman against O. M. C. cannot be sustained, there is no reason the separate verdict and judgment of plaintiff against both Bayman and O. M. C. should fall by the wayside in this well-tried action involving difficult and intricate issues. The appropriate disposition would be to reverse only the Bayman judgment for indemnity against O. M. C. and remand the action for trial of the issue of contribution between them under SDCL 15-8. I do not understand the opinion to affect in any way the right to contribution between defendants.