Walter A. SAYLER, Plaintiff
and Appellee,

v.

J. D. HOLSTROM and the Hartford Steam
Boiler Inspection and Insurance Compa-
ny, Defendants, Third-Party Plaintiffs,
and Appellants,

v.

DICKINSON CHEESE CO., INC., Third-
Party Defendant and Appellee.

Civ. No. 9144.

Supreme Court of North Dakota.

Feb. 11, 1976.
Rehearing Denied March 12, 1976.

Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, for defendants, third-party plaintiffs, and appellants; argued by John Rowell, Moorhead, Minn.

Conmy, Rosenberg & Lucas, Bismarck, for third-party defendant and appellee; argued by A. William Lucas, Bismarck.

Reichert, Howe, Hardy, Moench, Galloway & Jorgensen, P.C., Dickinson, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Walter A. Sayler alleges that as a result of a boiler explosion at Dickinson Cheese Co., Inc. on June 20, 1971, he suffers from certain chronic and progressive maladies. At the time of the explosion Dickinson Cheese was a complying employer under the Workmen's Compensation Act and Sayler's injury entitled him to benefits of the Act.

By complaint dated September 30, 1974, Sayler alleges that J. D. Holstrom in his capacity as employee and agent of the Hartford Steam Boiler Inspection and Insurance Company either failed to inspect or negligently inspected the boiler; that Hartford owed him a duty to inspect the boiler in order to insure its safe condition and operation as well as its being free from defects; that a report of the inspection was filed with the North Dakota Workmen's Compensation Bureau and did not represent the true condition and operation of the boiler; that, as a result of the report, Dickinson Cheese was issued a Certificate of Inspection by the Bureau and was allowed to continue to operate the boiler in a defective and unsafe condition and manner until it exploded.

On behalf of its agent Holstrom, Hartford denies that the inspection was negligent; asserts that its negligence, if any, was merely passive and secondary, while the negligence of Dickinson Cheese was primary and active; and contends that Dickinson Cheese had warranted to Hartford that it would maintain and operate the boiler in a careful and safe manner and in accordance with applicable law (Chapter 65–12, N.D.C.C.) and regulations. Hartford's third-party complaint prays for judgment against Dickinson Cheese "for all sums that may be adjudged against the Defendants and Third-Party Plaintiffs [Holstrom and Hartford] in favor of the Plaintiff herein [Sayler]."

Dickinson Cheese responded by petitioning the Burleigh County District Court to dismiss the third-party complaint upon grounds that Section 65–01–08, N.D.C.C., provides a complying employer with immunity from liability in situations of this type. The trial court determined that "the only relationship that conceivably could exist between the third party plaintiffs and the third party defendant would be that of joint tortfeasors." Relying on the United States District Court case of *White v. McKenzie Electric Cooperative, Inc.*, 225 F.Supp. 940 (D.N.D.1964), to the effect that neither contribution nor indemnity is available to a third party from a complying employer in the absence of a direct contractual relationship, the trial court concluded that "the decision laid down in *Boettner* [v. *Twin City Construction Company*, 214 N.W.2d 635 (N.D.1974)] demonstrates to this Court that immunity from direct or indirect action is still the rule in North Dakota for causes of action arising prior to the enactment of our Comparative Negligence Statute when related to employers."

In *White* Chief Judge Register distinguished the cases cited by McKenzie Electric in support of its third-party complaint against White's employer on the basis that there existed in those cases "either directly or impliedly, an independent contractual relationship between the employer and third party." *White v. McKenzie Electric Cooperative, Inc., supra*, 225 F.Supp. at 946.

In *Boettner* we addressed ourselves to the question "whether an employee of one contractor . . . may sue the employee of another contractor of the same status for negligently causing injuries arising during the employment." *Boettner v. Twin City Construction Company, supra*, 214 N.W.2d at 637. After noting the trial court's interpretation of Section 65–01–01, N.D.C.C., as an indication that workmen's compensation laws are designed for the welfare of the workman, we concluded that Section 65–01–08, N.D.C.C.,

" . . . grants immunity from suit, if the conditions prescribed therein are met, only to the employer and fellow employees of the employee who was injured, and to no one else—not to other 'employers,' whether general contractors, independent contractors, or other subcontractors, or the employees of any of them. See *State v. E. W. Wylie Co.*, 79 N.D. 471, 58 N.W.2d 76 (1953)." *Id.*, at 640.

Hartford contends herein that Sections 65–01–01, 65–01–08, 65–04–28, and 65–05–06, N.D.C.C., are not intended to preclude its action in indemnity against Dickinson Cheese and that, insofar as indemnity is precluded, those sections violate Section 22 of the North Dakota Constitution and Section 1 of the Fourteenth Amendment to the United States Constitution.

■ On this appeal from summary judgment in favor of Dickinson Cheese, we must determine if the information available to the trial court, when viewed in the light most favorable to Hartford, precluded a genuine issue as to any material fact and entitled Dickinson Cheese to summary judgment as a matter of law. Rule 56(c), N.D.R.Civ.P.; *Farmers Elevator v. David*, 234 N.W.2d 26 (N.D.1975).

Because we conclude that the third-party action for indemnity does not lie, we reach neither the issue involving the extent to which the Workmen's Compensation Act precludes indemnity against a complying employer nor the constitutional issues asserted.

■ Indemnity is often compared with contribution. The two

" * * * are variant remedies used to secure restitution. Although similar in nature, they differ in the relief afforded. Contribution rests upon common liability, not joint negligence or joint tort. [Citations omitted.] Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds. [Citations omitted.] Thus,

if, as a matter of law, the concurring negligence of the party from whom contribution is sought gives the injured party no cause of action against him, the claimant cannot recover contribution, even though such concurring negligence was a proximate cause of the injury. [Citations omitted.] The right of contribution does not exist in such circumstances because there is no common liability." *Guillard v. Niagara Machine & Tool Works*, 488 F.2d 20, 22–23 (8th Cir. 1973).

A year after *Guillard*, the Minnesota Supreme Court, speaking of indemnity, noted an interpretation of its earlier opinion in *White v. Johnson*, 272 Minn. 363, 137 N.W.2d 674 (1965):

"As pointed out in 53 Minn.L.Rev. 1078, 1082, '[t]his language seems to indicate the essentially equitable nature of indemnity, which precludes the use of strict standards and which requires courts to examine carefully both parties' conduct in light of general notions of justice.' " *Hillman v. Wallin*, 298 Minn. 346, 215 N.W.2d 810, 813 (1974).

The focus on conduct of the parties has been directed by other courts. Indemnity has been described as the remedy which secures "the right of a person to recover reimbursement from another for the discharge of a liability which, as between them, should have been discharged by the other." *Guillard v. Niagara Machine & Tool Works, supra*, 488 F.2d at 23.

The Seventh Circuit Court of Appeals has indicated its belief that

" * * * under *Carver v. Grossman* [55 Ill.2d 507, 305 N.E.2d 161 (1973)] the proper focus is on whether the conduct of the party seeking indemnification significantly contributed to the harm caused so as not to warrant shifting the entire burden of damages, and therefore is active negligence prohibiting indemnification." *Lorance v. Marion Power Shovel Company, Inc.*, 520 F.2d 737, 740 (7th Cir. 1975).

Finally, a recent California decision, after noting that a right to indemnity may arise

from contract or "from the equities of a given situation," declares that indemnity "applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." *Aetna Life & Casualty Co. v. Ford Motor Co.*, 50 Cal.App.3d 49, 122 Cal.Rptr. 852, 854 (1975).

From this focus on conduct of the parties Hartford urges us to adopt disparity of fault, i. e., active (or primary) versus passive (or secondary) negligence, as a proper basis for indemnification. The Court of Appeals of New York in a 1972 opinion described the active-passive test as "elusive and difficult of fair application" and as resulting in "the uncertain and largely unpredictable nature of the measure of redress that has been allowed by indemnity in favor of a party found negligent against another who played an effective role in causing the damage." *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 386–387, 282 N.E.2d 288, 291–292, 53 A.L.R.3d 175, 178–179 (1972). *See also* Annot., 53 A.L.R.3d 184, 210–214 (1973).

For greater specificity than the active-passive test, Hartford suggests that we accept the situations set forth by the Minnesota Supreme Court as appropriate for indemnification:

"Although the modern view, prevailing in this state, does not preclude indemnity among joint tortfeasors, the situations in which it is allowed are exceptional and limited. A joint tortfeasor may generally recover indemnity only in the following situations:

"(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

"(2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.

"(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

"(4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

"(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved.

"Many cases suggest that indemnity is granted where there is a great disparity in the degree of fault of the parties. This may be a satisfactory rationalization of the results. However, this court has not relied upon such rationale, and the Minnesota cases are equally explicable by the more specific principles stated above." [Footnotes omitted.] *Hendrickson v. Minnesota Power & Light Company*, 258 Minn. 368, 104 N.W.2d 843, 848–849 (1960); *accord, Carlson v. Smogard*, 298 Minn. 362, 215 N.W.2d 615 (1974). *But see Hillman v. Wallin, supra*, 215 N.W.2d at 813.

Of the five situations enumerated by the Minnesota Supreme Court, only (3) and (4) might be applicable to the facts of this case. Since we agree with criticisms of the active-passive test—that it is "fraught with difficulties and artificial distinctions in many [cases] and often [results] in inequities," Annot., 53 A.L.R.3d 184, 212 (1973)— we address ourselves to those specific situations.

■ We believe that (4) is disposed of by reference to a decision of this court. In 1967 we declared that

" * * * in an action for indemnity, the rule is well settled in 42 C.J.S. Indemnity § 27, p. 604, that:

" ' * * * the right of a person exposed to liability and compelled to pay damages on account of the negligent or tortious act of another to indemnity from the latter * * * does not apply where both parties are joint tort-

feasors, or are in pari delicto, as where the act of each of the parties contributed to cause the injury, * * * ' "

*Steuber v. Hastings Heating & Sheet Metal Company,* 153 N.W.2d 804, 808 (N.D.1967).

■ If Hartford owed a duty of care to Sayler and negligently violated that duty, thereby proximately causing injury to Sayler, it can not recover indemnity from Dickinson Cheese. On the basis of *Steuber* we conclude that comparison of degrees of fault is not appropriate where one party seeks indemnity from another; *accord, Highway Construction Company v. Moses,* 483 F.2d 812, 817 (8th Cir. 1973), and *Transcon Lines v. Barnes,* 17 Ariz.App. 428, 498 P.2d 502, 509 (1972).

The same conclusion has been reached by courts in Arizona and South Dakota. An appellate court in Arizona has reiterated its declaration in *City of Phoenix v. Kenly,* 21 Ariz.App. 394, 519 P.2d 1159 (1974), that the Arizona Supreme Court decisions in *Busy Bee Buffet v. Ferrell,* 82 Ariz. 192, 310 P.2d 817 (1957), and in *Crouse v. Wilbur-Ellis Co.,* 77 Ariz. 359, 272 P.2d 352 (1954), permit indemnity only if the party seeking it was not personally at fault and did not actively participate in the wrong, but is nonetheless liable for the conduct of the indemnitor who actively caused the injury because of a legal duty to the third party. *Salt River Proj. Agr. Imp. & P. D. v. City of Scottsdale,* 24 Ariz.App. 254, 537 P.2d 982, 984 (1975). The court held therein that negligence consisting of failure to act is not synonymous with passive negligence so as to permit indemnity against a codefendant tortfeasor.

■ Noting that "a joint tortfeasor is without personal fault when he has not participated in the commission of the tort and his liability arises by operation of law," the Supreme Court of South Dakota declared

"It is generally held that where joint tortfeasors are in pari delicto—that is,

where each is chargeable with active or affirmative negligence contributing to the injury, neither is entitled to indemnity from the other although contribution may be available. 41 Am.Jur.2d, Indemnity, § 21." *Degen v. Bayman,* 86 S.D. 598, 200 N.W.2d 134, 137 (1972).

■ There remains Hartford's allegation that Dickinson Cheese owed Hartford an implied duty of indemnification. In this situation, numbered (3) by *Hendrickson,* some courts have allowed indemnity

" * * * where the injury which resulted to a third person, as to whom both of the parties were negligent or guilty of a wrongful act, arose from a violation by the defendant of a duty owing by him to the plaintiff, or that where the defendant was a wrongdoer to the plaintiff but the plaintiff was not a wrongdoer to the defendant, although both were liable to the person injured, the plaintiff may recover contribution or indemnity, as the case may be, from the defendant notwithstanding the fact that his negligence also contributed to the third person's injury. [Citations omitted.]" Annot., 140 A.L.R. 1306, 1306–1307 (1942).

This exception has been limited largely to well-settled duties. *Dehn v. S. Brand Coal & Oil Co.,* 241 Minn. 237, 63 N.W.2d 6 (1964), allowed indemnity against the city of St. Paul on the basis that its failure to correct a dangerous condition upon expiration of its lease of land used as a public dump was a breach of an implied covenant to return the premises in as good condition as when received by the city. *Fidelity & Casualty Co. of New York v. Northwestern Telephone Exch. Co.,* 140 Minn. 229, 167 N.W. 800 (1918), involved negligence by the telephone company in failing to securely fasten its wires to poles, a duty owed by the telephone company to the electric company. The latter had settled with the injured employee due to its own negligence in failing to discover the defect.

*Minneapolis Mill Co. v. Wheeler,* 31 Minn. 121, 16 N.W. 698 (1883), allowed a canal

owner to recover indemnity from the mill company which had a right-of-way and a right to maintain a bridge over the canal. *Hanson v. Bailey,* 249 Minn. 495, 83 N.W.2d 252 (1957), did not allow indemnity where the negligence of each defendant was a proximate cause of the accident and there was no evidence that one defendant was recklessly or willfully negligent after discovering the obstruction on the highway.

In North Dakota two decisions have discussed implied indemnity in relation to municipalities' duty to maintain sidewalks and streets. *Keller v. City of Fargo,* 49 N.D. 562, 192 N.W. 313 (1923), and *City of Grand Forks v. Paulsness,* 19 N.D. 293, 123 N.W. 878 (1909). In neither case was it established that the private defendants were negligent, so the cities were unable to recover indemnification.

Products liability cases also result in indemnification because of a duty owed to one tortfeasor by another. See *Aetna Life & Casualty Co. v. Ford Motor Co., supra,* 122 Cal.Rptr. 852, where the lessee of an automobile recovered from the manufacturer which owed the lessee a duty to maintain safe brakes, even though the lessee owed the injured party a duty to inspect the brakes.

▋ We do not believe that the relationship of insurer and insured, alone, is sufficient to find an implied duty of indemnity in favor of the insurer. Because of the inspection function for the Workmen's Compensation Bureau served by Hartford, implied indemnity might conceivably run from Hartford to Dickinson Cheese, but we cannot conceive of how it could run from Dickinson Cheese to Hartford on the record before us.

Accordingly, we conclude that the facts of this case do not fall within (3) or (4) of *Hendrickson.*

Hartford suggests, however, that if indemnity is not available to it in this case, we adopt an approach wherein

" * * * a result can be achieved which * * * permits an injured workman to recover from a third party damages for which the third party is responsible, and yet does not compel that third party to respond in damages for the negligence of the workman's employer, which negligence constitutes a breach of the employer's duty to the third party. This approach would permit the third party sued by the workman to proceed against the negligent employer in an action for indemnity,[1] and require the jury to apportion blame between the third party and employer. The third party would then be required to pay to the injured workman its proportionate share of the workman's damages. The employer would then be compelled to pay its proportionate share only to the extent of workmen's compensation benefits, or because of the exclusivity provisions of the North Dakota Workmen's Compensation Act, would be absolved from further liability. The incentive for an employer against which a third party action in indemnity is asserted to defend that action would lie in the damage to the experience rating of the employer should it fail to defend effectively the third party action and thus seek to place as much responsibility as the facts warrant upon the third party sued by the injured workman."

▋ As previously noted, this action arose before the legislature adopted our comparative negligence statute, S.L.1973, Ch. 78, § 1, codified as Section 9–10–07, N.D.C.C. Chapter 32–38, N.D.C.C., then, and still, in effect provides for contribution among tortfeasors. In determining the shares of tortfeasors in the entire liability,

---

1. For purposes of this quotation Hartford has borrowed the term "indemnity" from the New York Court of Appeals decision in *Dole v. Dow Chemical Co., supra.* Throughout the remainder of its brief Hartford conforms to the general definitions of contribution and indemnity. New York calls the concept "indemnity" but allows apportionment of liability in a nature similar to contribution.

the law mandates that relative degrees of fault not be considered. Section 32–38–02(1), N.D.C.C.

Viewing the claim upon and the compensation from the workmen's compensation fund as a release or covenant not to sue could be considered harmonious with the "view to effecting [the Code's] objects and to promoting justice." Section 1–02–01, N.D.C.C. Under this proposal the injured employee would receive his workmen's compensation award regardless of fault; the employer's liability would be limited to payment of premiums; the third party would not subsidize the workmen's compensation fund.

We are confronted, however, by Section 65–01–09, N.D.C.C., which reads in pertinent part as follows:

"65–01–09. Injury through negligence of third person—Option of employee—Fund subrogated when claim filed.—When an injury or death for which compensation is payable under provisions of this title shall have been sustained under circumstances creating in some person other than the fund a legal liability to pay damages in respect thereto, the injured employee, or his dependents may claim compensation under this title and proceed at law to recover damages against such other person. The fund shall be subrogated to the rights of the injured employee or his dependents to the extent of fifty percent of the damages recovered up to a maximum of the total amount paid or to be paid in compensation and benefits for the injured employee and the action against such other person may be brought by the injured employee, or his dependents in the event of his death, in his or in his dependents' own right and name and as trustee for the workmen's compensation bureau for the subrogation interest of the bureau. * * * " N.D.C.C.

Conceivably justice could be promoted and the objects of the Workmen's Compensation Act upheld if the fund's right to subrogation were restricted to instances where the employer is without fault. Such a limitation of subrogation would assure the employee full recovery of damages.

If the employer's fault were in issue and justice required, either the employer or the Bureau, or both, could conceivably be joined.

If the employer were found to be a joint tortfeasor, the payment by the fund to the employee could possibly be deemed for the full amount of the employer's pro rata share of the damages assessed. See Section 32–38–04, N.D.C.C.[2] To the extent, if any, that the compensation received by the employee from the fund exceeded the pro rata share, the fund could be subrogated to the employee's compensation from other tortfeasors.

This approach might encourage employers to exercise greater care for the safety of their employees which would inure to the benefit of the workmen. It might also encourage the Bureau to further emphasize industrial safety, which would also inure to the benefit of the workmen.

This approach, although we have discussed it herein and find it interesting, is not for us to adopt but is one that should be submitted to the legislature for its consideration. We accordingly decline to adopt it.

2.  "32–38–04. Release or covenant not to sue.—When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
"1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
"2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor." N.D.C.C.

The judgment of the trial court is therefore affirmed.

SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.