Joseph E. KIPKA, Plaintiff,

v.

**CHICAGO & NORTHWESTERN RAILWAY COMPANY, a corporation, and Atchison, Topeka and Santa Fe Railway Company, a corporation, and Preco, Incorporated, Defendants.**

**The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Third-Party Plaintiff,**

v.

**THEO. HAMM BREWING COMPANY, Third-Party Defendant.**

**THEO. HAMM BREWING COMPANY, Fourth-Party Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Fourth-Party Defendant.**

No. 3-65 Civ. 183.

United States District Court
D. Minnesota,
Third Division.

Sept. 18, 1968.

Maun, Hazel, Green, Hayes, Simon & Aretz, by Merlyn C. Green, St. Paul, Minn., for fourth-party plaintiff.

Diessner, Wurst, Bundlie & Carroll by A. Thomas Wurst, Minneapolis, Minn., for fourth-party defendant.

NEVILLE, District Judge.

Involved here is a question of insurance coverage, presented by a fourth-party complaint lodged by Theo. Hamm Brewing Company (Hamm) against Aetna Casualty and Surety Company (Aetna). The case was tried by the court without a jury on an agreed stipulation of facts.

On May 26, 1965 Joseph Kipka, the original plaintiff in this action and an employee of Hamm was injured while assisting in the loading of cases of beer into a railroad boxcar owned by the Atchison, Topeka and Santa Fe Railway (Santa Fe) and delivered to Hamm's siding by the Chicago & Northwestern Railway Company (C & NW). The injuries sustained by Kipka were occasioned by certain load divider doors within the boxcar manufactured by Preco, Incorporated, becoming detached and falling upon him. The injuries arose out of and in the course of the employment of Kipka as an employee of Hamm. Hamm, as a self-insurer, paid Kipka benefits totaling $3,357 pursuant to the provisions of the Workmen's Compensation Act of Minnesota.

In June 1965 Kipka as plaintiff brought this diversity action to recover $125,000 from Santa Fe and C & NW for his injuries, alleging negligence and breach of warranty. Preco was subsequently named as an additional defendant. Thereafter, Santa Fe served on Hamm a third-party complaint seeking recovery by way of indemnification from it. At the time of the accident Hamm carried with Aetna a comprehensive liability insurance policy. After service upon Hamm of the third-party complaint, Hamm tendered its defense to Aetna. Aetna refused. Hamm thereupon undertook the defense itself and served a fourth-party complaint on Aetna.

When the case was called for trial, a compromise settlement was effected between and among all parties except Aetna, resulting in the action being dismissed with prejudice as to all parties and as to all claims with the exception

of the instant fourth-party claim. By the settlement the defendants jointly paid Kipka $15,000 and Hamm $1,500, the latter "in full release of all claims which Hamm may have by way of subrogation or workmen's compensation * * * benefits paid * * *." Hamm theretofore had paid Kipka $3,357, and had incurred in its defense attorney fees in the stipulated reasonable amount of $4,400, a total (less the $1,500 received in the aforesaid settlement) of $6,257 for which it claims Aetna is liable. It claims that Aetna breached its insurance contract in refusing the tender of the defense and in failure to pay $1,857, the balance paid by it to Kipka under the Workmen's Compensation Act.

Both parties have addressed themselves to the issue of this court's subject matter jurisdiction over the fourth-party action, admittedly involving diverse citizenship but less than $10,000 now that the main action has been settled. It is clear that this court retains jurisdiction over this fourth-party action. The court's jurisdiction attaches when the complaint is filed and subsequent proceedings ordinarily will not divest the court of jurisdiction once attached. Stewart v. Shanahan, 277 F. 2d 233, 236 (8th Cir. 1960). As set forth in the pleadings, the requisite diversity of citizenship and jurisdictional amount were present in the main action. It is well settled that third-party claims, and thus logically fourth-party claims, which are ancillary to the main action, need no independent jurisdictional grounds. See, Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 585 (2nd Cir. 1965); Waylander-Peterson Co. v. Great Northern Ry., 201 F.2d 408, 415, 37 A.L.R.2d 1399 (8th Cir. 1953). Further, jurisdiction over a third-party action, or in this case a fourth-party action, is not lost when the main action is settled. See, Dery v. Wyer, 265 F.2d 804, 808 (2nd Cir. 1959).

The essential question is whether the insurance contract between Hamm and Aetna provided coverage which obligated Aetna to accept the tender of the defense by Hamm and to pay any judgment that might ensue or that might have ensued against Hamm. The relevant portions of the insurance contract read as follows:

Coverage C:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

Insuring Agreement II:

"With respect to such insurance as is afforded by this policy, the company shall:

(a) Defend any suit against the insured alleging such injury, * * * and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

Exclusion (f):

"This policy does not apply:

Under Coverage C, except with respect to liability assumed by the Insured under a contract as defined herein, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured;"

Definition of Contract in Exclusion (f):

"The word 'contract' means, if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement, or elevator or escalator maintenance agreement."

It is the position of Hamm that Coverage C and Insuring Agreement II provided coverage and placed upon Aetna the responsibility of defending the third-party action and paying for any resulting liability. Hamm argues that the third-party claim of Santa Fe against Hamm fell outside the provisions of Exclusion (f). While recognizing that Ex-

clusion (f) relieves Aetna of responsibility for a claim brought against Hamm by an employee, Hamm asserts that the third-party claim of Santa Fe alleged a claim of indemnification for the breach of an independent duty owed by Hamm to Santa Fe. This duty, says Hamm, as stated in the third-party claim was threefold: (1) an undertaking to perform the loading of the boxcar in a competent and safe fashion; (2) an implied warranty that the work would be done in such fashion as not to expose Santa Fe to liability; and (3) a liability on the ground that the injuries occurred through the primary negligence of Hamm as opposed to the secondary negligence, if any, of Santa Fe. Hamm though not strongly urging ground (3) contends that Aetna did have the duty to defend at least under (1) and (2) above.

Aetna, on the other hand, contends initially that Coverage C is inapplicable, even without looking to Exclusion (f), because the indemnity claim against Hamm was not a sum which Hamm might be legally obligated to pay "as damages because of bodily injury * * caused by accident." Aetna strongly urges that in any event, such insurance coverage if applicable is excluded by Exclusion (f) because the third-party claim was based on bodily injuries to one of Hamm's employees "arising out of and in the course of his employment by the insured."

Under the Minnesota Workmen's Compensation Act, an injured employee is barred from any suit for damages against his employer. Minn.Stat. § 176.031. However, an employee may sue a third party tort-feasor for damages, notwithstanding the payment to him of compensation by his employer, where the third party is not engaged in a common enterprise with the employer or covered by the Act. Minn.Stat.

§ 176.061(5). In addition, such third party has been permitted to bring an indemnification action against the employer for an amount based on the third party's liability to the employee even though the employee could not sue the employer directly. In this regard, it is said that the Workmen's Compensation Act does not encompass nor limit the rights of a third party against the employer. See, Hendrickson v. Minnesota Power & Light Co., 258 Minn. 368, 104 N.W.2d 843 (1960); Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355, 43 A.L.R.2d 865 (1954).[1]

In view of the effected settlement of the principal case as above described, there is no verdict or judgment by Kipka against Santa Fe, C & NW or Preco for which as third-parties they might now be claiming recovery from Hamm, and which Hamm in turn might be asking Aetna to pay.

The parties in fact have stipulated that "if Hamm be entitled to recover against Aetna in this matter, the amount thereof should be and is in the sum of $6,257.00 * * *." Despite this stipulation, the court is of the view that there are two distinct questions presented to each of which there is a different answer. The first is whether Hamm is entitled to recover the balance not realized out of the general settlement of the amount paid out to Kipka in the form of Workmen's Compensation benefits, i. e., $1,857.00—to which the answer is in the negative. The second is whether Hamm is entitled to the amount it expended for attorney's fees to defend itself upon Aetna's refusal of the tender of the defense, i. e., $4,400.-00—to which the answer is in the affirmative. Different considerations govern each question.

It can perhaps be argued that Hamm, by agreeing in the general settlement of the main action to accept $1,500.00 in

1. A similar result has been reached by the United States Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 130–132, 76 S.Ct. 232, 100 L.Ed. 133 (1956); and this appears to be the majority rule among the states.

full when it might have had, and certainly had there been a jury verdict clearly would have had a right of subrogation for $3,357, thereby waived or relinquished its right against Aetna as well as others to recover the balance. The court believes that for other reasons however there should be no recovery of $1,857 against Aetna.

Exclusion (f) most certainly prohibits such recovery. Hamm paid out $3,275 as a self-insurer for workmen's compensation. It received back $1,500 which factor is of no significance to a solution of this question. Aetna is not, and did not intend to be and did not become a workmen's compensation carrier. Exclusion (f) is and was designed to accomplish just that. All of counsel's argument concerning the right of indemnity which a third party sued by an employee might have against an employer is quite immaterial to this issue and seems completely to miss the mark. There is in fact no third party claiming this $1,875 from Hamm. Hamm has merely paid it out, has not received it back, and wants its insurer Aetna to reimburse it. This it clearly cannot do.

A different question is presented as to the $4,400 admitted to be the fair and reasonable amount expended by Hamm for attorney fees in its defense. Here the question is, did Aetna owe Hamm a defense? It did if the third-party complaint contained allegations falling within Coverage C, or that reasonably appeared at the time of the service of the complaint—not as events later developed—to be within the insurance coverage provided by the policy. Perhaps in cases such as this no one ever can know, without a full trial and the taking of evidence, whether coverage actually existed. Such it seems to the court is true here. Reasonable doubts must be resolved in favor of the insured. No trial of the main action ever will be had and thus proof of the precise facts which would or might make applicable some of the case authority cited by Hamm counsel, or the converse, never will be known. It seems clear to the court

however that under existing case law, including Minnesota, certain facts if developed and proven at a trial might have made Hamm liable to the third party or parties on an indemnity or contractual theory and liability might thus fall on Aetna under Coverage C and not be barred by exclusion (f).

Admittedly this whole controversy grew out of (to quote Coverage C) "bodily injury * * * sustained by *any* person and caused by accident" (emphasis added), i. e., injury to Kipka. The Insuring Agreement says that the company shall:

"[D]efend any suit against the Insured [which this surely was] alleging such injury [which this complaint and the third-party complaint most surely does] * * * and seeking damages on account thereof [which the third-party complaint prayed for] *even if such suit is groundless, false or fraudulent * * ** " (Emphasis added)

The court recognizes that the term "groundless" applies to the merits of the action, and not to the question of the existence of insurance coverage. As stated in Hagen Supply Corp. v. Iowa Nat'l Mutual Ins. Co., 331 F.2d 199, 203–204 (8th Cir. 1964):

" * * * The general rule is that an insurance company under a provision requiring it to defend an action even if it is groundless, false or fraudulent, is under no duty to defend a claim which is outside the coverage provided by the policy. 7A Appleman, Insurance Law and Practice, § 4684, pp. 448–449 (1962); Annot., 50 A.L.R. 2d 458 (1956); Annot., 49 A.L.R.2d 694 (1956)."

In effect, Aetna would have this court rewrite the policy and restrict Coverage C to sums payable "as damages to the injured person." Coverage C cannot be read so narrowly. The evident purpose of Coverage C is to indemnify Hamm for all injuries caused by accident sustained by any person. There is no requirement in Coverage C that the in-

jured party must sue Hamm directly. Finally, the fact is, in the instant case, that the third-party claim against Hamm was brought "because of bodily injury" caused by accident and sustained by "any person," i. e., Kipka. This was not some event unrelated to the insurance policy such as claimed property damage, a suit on an open account, product liability, a claim for fraud, or some other tort or disassociated claim, but did generate out of and was caused by a bodily injury as mentioned in Coverage C in the policy. Had there been no injury, no claim would have been or could have been asserted—granted that in the form of the third party complaint it was a "second hand" assertion in that it was not asserted by the injured party himself. Coverage C doesn't require the latter. Apropos here is Youghiogheny & Ohio Coal Co. v. Employers' Liability Assurance Corp., 114 F.Supp. 472 (D. Minn. 1953), aff'd, 214 F.2d 418 (8th Cir. 1954), where the court stated:

"The question of coverage is to be determined from the allegations in the complaint against the insured. The fact that the complaint may be spurious, fraudulent or false will not absolve the insurer of its duty to defend, even though objective truth would indicate that there is no liability on the part of the insured. Socony-Vacuum Oil Co. v. Continental Casualty Company, 144 Ohio St. 382, 59 N.E.2d 199; Bloom-Rosenblum Kline Co. v. Union Indemnity Co., 121 Ohio St. 220, 167 N.E. 884; Luchte v. State Automobile Mutual Ins. Company, 50 Ohio App. 5, 197 N.E. 421; Hardware Mutual Casualty Company v. Mason-Moore-Tracy, Inc., D.C., 96 F.Supp. 861.

A provision whereby an insurer agrees to defend even groundless suits, will be construed against the insurer, and insurer will not be given an option of deciding whether the action was proper or sufficient on its face. Grand Union Stores v. General Accident, Fire & Life Assurance Corporation, 163 Misc. 451, 295 N.Y.S. 654, affirmed 251 App.Div. 810, 298 N.Y.S. 187.

\* \* \* \* \* \*

Even though a complaint against the insured asserts a cause of action upon various grounds which are not within the coverage of the policy, the duty to defend arises from any allegations setting forth the cause of action which might be within the coverage. Christian v. Royal Insurance Company, 185 Minn. 180, 240 N.W. 365; Boutwell v. Employers' Liability Assurance Corporation, 5 Cir., 175 F.2d 597."

Whether, then, Aetna was required to defend depends on the possible existence at time of service of the complaint of an action in the nature of an indemnity action. In Hackensack Water Co. v. General Accident Fire and Life Assurance Corp., 84 N.J.Super. 479, 202 A.2d 706 (App.Div.1964), the court held that the insurer was not obligated to defend a third-party claim for common law indemnification against the insured-employer brought after the third party had been sued by an employee of the insured for injuries sustained in the course of employment. The court, in so holding pointed out:

"The third-party complaint was not based on Hackensack's alleged assumption of liability by contract but rather on the allegation that the injuries to Jansen were caused by the sole, primary negligence of Hackensack, and that either Vergona was not negligent or any negligence on its part was secondary in character, resulting in a right to indemnification as a matter of common law."

If this case were to be followed it may well be that where there is a third-party claim sounding solely in tort (based either on the right to contribution or on the right to indemnification because of the primary negligence of the employer), the insurer has no obligation to defend under an exclusion for injuries to em-

ployees arising out of their employment.[2] Not having heard the facts of the case on a trial, this cannot be determined.

On the other hand, where courts have found implied contractual obligations of indemnification between the third party and the employer, as distinguished from mere tort liability, they have required the insurer to defend the employer in the third-party action. See, Indemnity Insurance Co. of North America v. California Stevedore & Ballast Co., 307 F. 2d 513 (9th Cir. 1962); and Zidell Machinery & Supply Co. v. Travelers Indemnity Co., 264 F.Supp. 496 (D. Ore. 1967).[3]

In *Indemnity Insurance* the court rejected the insurer's argument that an exclusion, similar to Exclusion (f) in this case, made the policy inapplicable. The exclusion, the court emphasized, was concerned with

> "Workmen's Compensation or Employer's Liability, or, perhaps both. The shipowners' claims in the case at bar dealt with neither. Appellees [the stevedore-employer] have not been held liable to their employees; appellees' losses were predicated on their breach of contract. Indeed, the Act precludes their liability to their employees. We do not read Exclusion (c) as excluding anything having to do with appellees' contractual liabilities." [307 F.2d at 515–516]

*Zidell* involved similar facts again where an insurance company had refused a tender of defense of an indemnification action by a shipowner against the employer-stevedore. In holding the insurer liable, the court found that an exclusion identical to Exclusion (f) in this case did not render the policy inapplicable to the indemnification claim. The court mentioned that *Hackensack* was not controlling since in *Zidell* the stevedore was liable to the shipowner on the theory of breach of warranty.

The third-party claim in the case at bar as alleged in the complaint does not fall neatly into either a tort or contractual claim. The pleadings of the third-

---

2. Accord: Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 144 N.W.2d 303, 309 (1966) wherein the court said:

"Only in those instances in which the party passively negligent has been allowed indemnity from the party actively negligent, do you have a situation in which 'indemnity is only an extreme form of contribution.' Slattery v. Marra Bros. [Inc., 186 F.2d 134, 138 (2nd Cir. 1950)]. Such cases involve concurrent negligence (of different degrees) of the tort-feasors toward the injured party. This form of indemnity is barred by the common liability rule when one of the tort-feasors is an employer under the Workmen's Compensation Act. Indemnity is permissible when the right arises out of a separate duty due the third party from the employer."

3. The following cases are relied on in *Indemnity* and *Zidell* and have found implied warranties by the stevedore-employer to perform its services and handle the equipment incidental thereto in a safe and workmanlike manner. An alleged breach of these warranties giving rise to a claim of indemnification has been characterized as a contractual claim.

Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 134, 76 S.Ct. 232, 237, 100 L.Ed. 133 (1956): "The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of [the] stevedoring service."

Weyerhaeuser S. S. Co. v. Nacirema Co., 355 U.S. 563, 569, 78 S.Ct. 438, 442, 2 L.Ed.2d 491 (1958):

" * * * in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate."

Hugev. v. Dampskisaktieselskabet Int'l, 170 F.Supp. 601, 607 (S.D.Calif. 1959), aff'd per curiam sub nom., Metropolitan Stevedore Co. v. Dampskisaktieselskabet Int'l, 274 F.2d 875 (9th Cir. 1960):

"While the shipowner's liability to the individual longshoreman may be said to be predicated upon principles of tort liability * * * the authorities hold that the shipowner's so-called right to indemnity, absent express provisions of contract * * * is nothing more or less than a right to recover damages for breach by the stevedoring company of an implied-in-fact obligation of the stevedoring contract."

party complaint allege that Hamm set up a pool of some fifty boxcars and requested Santa Fe to assign five boxcars to the pool. Accordingly, Santa Fe requested C & NW to deliver the boxcar in question into the possession and control of Hamm. The complaint alleges that Hamm, in requesting and accepting such assignment, owed Santa Fe "the duty to exercise that degree of care necessary to handle boxcars in safety and without subjecting [Santa Fe] to any liability." This same sentence further alleges that if Santa Fe is found liable, its liability is only secondary as compared to the primary responsibility and conduct of Hamm. Lastly, Santa Fe alleges that Hamm "impliedly warranted that it would possess, control, handle, load and otherwise deal with said boxcars competently and safely * * *" and that Hamm breached this implied warranty. If there be any written contract or agreement of any kind between Hamm and Santa F or C & NW, there is nothing in the pleadings so to indicate and the court has no evidence thereof Two of the third-party allegations appear to be based on a breach of warranty by Hamm. Traditionally, a breach of implied warranty lies somewhere between the fields of torts and contracts. Yet, the breaches in *Indemnity* and *Zidell,* where the insurer was required to defend, were based on breaches of implied warranties. There was no express contractual provision in either case.

An exhaustive discussion of indemnity appears in Hendrickson v. Minnesota Power & Light Co., 258 Minn. 368, 104 N.W.2d 843, 847 (1960). The court stated that:

"Indemnity is generally said to rest upon contract, either express or implied. However, there are numerous exceptions and situations in which a contract is implied by law, and con-

tract, therefore, seems to furnish too narrow a basis. In the modern view, principles of equity furnish a more satisfactory basis for indemnity. [footnotes omitted].[4]

While the court in *Hendrickson* expressly left open the question of whether an employer's undertaking and representation to use due care implied an undertaking to indemnify a third party for injuries to its employee arising out of an alleged breach of this duty, subsequent language of the court has gone in this direction. Thus, in Larson v. City of Minneapolis, 262 Minn. 142, 114 N.W. 2d 68, 72 (1962) the court stated:

"We do not agree as the landlord contends that here the right to indemnity must depend for existence upon express contractual provisions. Indemnity may be granted if the facts warrant whether or not specific contractual undertakings exist, this being clearly in accord with the theory that indemnity is essentially an equitable doctrine."

The Minnesota courts appear still to allow indemnification against the employer even though the cause of action is based only on the primary negligence of the employer. A separate or independent duty need not be shown. See, Daly v. Bergstedt, 267 Minn. 244, 126 N.W.2d 242 (1964).

This court believes that it does not have to resolve this knotty question at this time. It cannot determine controlling facts not included in the stipulation of the parties as to the relationship of the parties or the events which occurred where there has been no trial of the issues in the main action. Evidence might well have demonstrated that this case would fall within one of the several categories discussed in *Hendrickson*. At least without a trial the court cannot hold otherwise. It is sufficient to say

4. Some of these exceptions or situations which could be applicable in a case of this sort are (1) vicarious liability by operation of law, Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355, 43 A.L.R.2d 865 (1954); and (2) active or primary negligence versus passive or secondary negligence, Daly v. Bergstedt, 267 Minn. 244, 126 N.W.2d 242 (1964).

that on the face of the pleadings, the third-party complaint reasonably presented a possible meritorious claim within the insurance coverage based on an implied contractual indemnification obligation or otherwise, and this required Aetna to defend Hamm.

On the basis of the above, the court holds that Aetna, having refused the tender of the defense is liable to Hamm for the stipulated amount of $4,400.

This memorandum will constitute findings of fact and conclusions of law pursuant to Rule 52 (a) of the Federal Rules of Civil Procedure.

Let judgment be entered accordingly.