The **RIVIERA BEACH VOLUNTEER FIRE COMPANY, INC.,** a Maryland Corporation

v.

The **FIDELITY AND CASUALTY COMPANY OF NEW YORK,** a New York Corporation.

**Civ. A. No. N–74–360.**

United States District Court, D. Maryland.

Jan. 10, 1975.

T. Joseph Touhey, Glen Burnie, Md., for plaintiff.

Wilbur D. Preston, Jr., and William B. Whiteford, Baltimore, Md., for defendant.

NORTHROP, Chief Judge.

This action for a declaratory judgment involves the construction of an insurance contract and, specifically, the scope of the defendant insurance company's duty to provide a legal defense under that contract. The plaintiff, The Riviera Beach Volunteer Fire Company, Inc. (hereinafter "Riviera Beach"), a corporation organized under the laws of the State of Maryland, initiated this action on March 7, 1974, in the Circuit Court for Anne Arundel County, Maryland, requesting that Court to determine the rights and liabilities of the parties under a contract of insurance between them, pursuant to the provisions of the Uniform Declaratory Judgments Act, Md.Ann.Code, Cts. & Jud.Proc. Art., §§ 3–401 to 3–415 (1974).[1] The defendant, The Fidelity and Casualty Company of New York (hereinafter "Fidelity"), a corporation organized under the laws of the State of New York with its principal place of business in that state, subsequently removed the case to this Court, pursuant to 28 U.S.C. § 1441.

Inasmuch as there is diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $10,000, this case was properly removable, and this Court has jurisdiction under 28 U.S.C. §§ 1332(a), 2201, and 2202. The case is now before this Court for decision, on an agreed statement of facts, on the parties' cross-motions for summary judgment.

## STIPULATED FACTS

Plaintiff, Riviera Beach, is actively engaged in the business of a volunteer fire company, with headquarters in Riviera Beach, Anne Arundel County, Maryland. On November 12, 1969, it entered into a contract of casualty insurance, policy number ABA 5572451, with the defendant through Stump, Harvey & Company, Inc., the defendant's authorized agent in Baltimore, Maryland. The plaintiff having paid the indicated annual premiums pursuant to the terms of the policy, the policy remained in full force and effect from the date of its issuance until July, 1973.

Pursuant to a covenant of that policy, the defendant contracted and agreed, *inter alia,* to defend any suit against the insured with respect to such insurance as was afforded by the policy for bodily injury liability and property damage liability. Thus, Part II of the policy provided in pertinent part as follows:

II *Defense, Settlement, Supplementary Payments.* With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . . .

On April 9, 1970, while responding to an emergency fire call, one of the plaintiff's fire engines, covered under the aforementioned policy, overturned while making a right hand turn at the intersection of Hog Neck and Fort Smallwood Roads in Anne Arundel County, Maryland. As a direct result of that accident, one passenger, Anne Arundel County firefighter John Balcer, was killed, and the driver, Charles W. Wareheim, Jr., and the other passengers, volunteer firefighters Joseph Sank, David McDevitt and Michael O'Connor, suffered serious bodily injuries.

At the time of the accident, Wareheim, the driver of the fire engine, was a full-time paid employee of the Anne Arundel County Fire Department, assigned in his regular duties to the Riviera Beach Volunteer Fire Company to serve as engineman and resident professional firefighter. Although Wareheim

---

1. Formerly Md.Ann.Code art. 31A, §§ 1–16 (1971).

also served as a volunteer firefighter with Riviera Beach, it is acknowledged that at the time of the accident he was on duty and was being compensated for his employment activities by Anne Arundel County.

Subsequent to the accident, all of the injured firefighters and the Estate of John Balcer filed Workmen's Compensation claims with Anne Arundel County for injuries and/or death sustained during the course of their employment,[2] and in each case medical and/or compensation benefits have been paid, or are still being paid, to the claimants by Employers of Wassau, the County's compensation carrier. .

In June, 1970, all of the volunteer firemen involved in the accident, Wareheim, and Dorothy Balcer, the surviving widow of John F. Balcer, instituted law actions in the Circuit Court for Anne Arundel County (Case Nos. C–3008/60/83 and C–4996) seeking damages respectively for personal injuries and/or wrongful death against Plotkin's, Inc. (hereinafter "Plotkin's"), a Maryland corporation, on the allegation of negligence that on April 6, 1970, prior to the fatal mishap, its agents, servants or employees negligently and carelessly installed new left rear tires on the ill-fated fire engine, resulting in a mechanical malfunction of the tires and of the fire engine and causing the injuries to the claimants and the death of John F. Balcer.

In October, 1971, pursuant to a Motion and Suggestion for Removal by counsel for Plotkin's, those cases were removed from the Circuit Court for Anne Arundel County to the Circuit Court for Howard County, and were consolidated there for trial.

On or about January 10, 1972, Plotkin's negotiated an out-of-court settlement of Wareheim's personal injury claim, and after the payment of settlement monies, secured from him a general release of all his claims for injuries arising out of the accident. That release was not a joint release, however, and almost contemporaneously with the negotiation of that settlement, Plotkin's filed third party claims against Wareheim in each of the pending actions,[3] alleging that he was liable for the damages sustained by the various plaintiffs because of the negligent manner in which he had operated the fire engine at the time of the accident. Plotkin's did not file any third party claims against Riviera Beach.

Although the remaining plaintiffs in the consolidated cases pending in the Circuit Court for Howard County subsequently filed amended declarations in those actions, none of them amended their declarations to include Wareheim as a codefendant with Plotkin's.[4] Thus, Wareheim's continuing presence in those cases was based solely upon the third party claims by Plotkin's, and was not due to any action filed against him by any of the original party plaintiffs.

In November, 1972, Fidelity initiated Case No. 6068 in the Circuit Court for Howard County, in the name of Riviera Beach "to its own use and to the use of The Fidelity and Casualty Company of New York," against Plotkin's to recover the sums which had been paid out under the policy for the repair of the damaged fire engine. That action was based

2. Under the Maryland Workmen's Compensation Act, Md.Ann.Code art. 101, § 34(a) (Cum.Supp. 1973), all of the members of the volunteer fire companies in Anne Arundel County are deemed workmen for wages and engaged in extra-hazardous employment within the meaning of that act while they are actually on duty as firemen.

3. The agreed statement of facts and the copies of the third party complaints which are attached thereto as Exhibit J reveal that the third party complaints were actually filed by

Plotkin's on or about December 31, 1971, some ten days prior to the date on which Wareheim entered into the release with Plotkin's.

4. The amended declarations, which were filed in the consolidated actions pending in the Circuit Court for Howard County on April 6, 1973, did, however, amend the original declarations, inter alia, to add Pierre Thibault (Canada), Ltd., the manufacturer of the fire engine, as an additional defendant.

upon a theory of negligence similar to that of the other previously pending law actions against Plotkin's, and it was consolidated with them for trial. Although that action was brought in the name of Riviera Beach, it was filed by Fidelity's attorneys pursuant to the provisions of the insurance policy, and without the knowledge or approval of any member of the Board of Directors of Riviera Beach.

As in the previous law actions, Plotkin's filed a general issue plea denying the asserted liability and a further third party claim against Wareheim, alleging that he was liable for the damages sustained by the plaintiff due to his negligent operation of the plaintiff's fire engine. Additionally, Plotkin's simultaneously filed a counterclaim against Riviera Beach alleging that Wareheim had been acting as its "agent, servant or employee" at the time of the accident and, therefore, that it was liable for the injuries and damages sustained by the plaintiffs in the previously pending personal injury/wrongful death actions.

Pursuant to its obligations under Part II of the insurance contract, Fidelity undertook to defend Riviera Beach against the allegations of the counterclaim, and its attorneys filed a plea thereto. At no time, however, did it offer or undertake to defend or provide counsel for Wareheim, who was named in the counterclaim as the agent of Riviera Beach.

On December 31, 1971, following the filing of the third party claims against Wareheim in the personal injury and/or wrongful death actions, Wareheim, by his attorney at that time, Robert J. Callanan, Esquire, mailed copies of all of the then pending third party claims to Fidelity with the request that it provide him with counsel and undertake his defense as an agent of Riviera Beach in accordance with the terms of its insurance contract. Wareheim also sought legal assistance and defense through his employer, the Anne Arundel County Fire Department, which denied any liability to provide legal assistance to him.

On January 6, 1972, Fidelity, through its agents, servants and employees, The Underwriters Adjusting Company, acknowledged and formally denied Wareheim's request for legal assistance and defense. The adjusting company maintained that although Wareheim would be considered a person operating the insured vehicle with the permission of the named insured, he was not an insured under the policy with respect to the subject claims because of the inclusion in the policy of the so-called "fellow employee exclusion," which provided in pertinent part that "[t]he insurance with respect to any person or organization other than the named insured . . . does not apply: . . . (2) to any employee with respect to injury to . . . or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

Following the refusal of the defendant to provide legal assistance and defense to Wareheim, the Board of Directors of Riviera Beach privately retained, at corporate expense, the legal counsel of T. Joseph Touhey, Esquire, for such purpose. Mr. Touhey subsequently commenced representation of Wareheim in August, 1972, and thereafter provided him with pretrial assistance, counsel and active representation in the ensuing trial in the Circuit Court for Howard County. Mr. Touhey's fees for the services rendered to date have totalled $8,470, a sum which the parties herein have stipulated is fair and reasonable.

Trial of the consolidated cases commenced in the Circuit Court for Howard County on January 21, 1974. Following two and one-half weeks of trial, argument by counsel and instructions by the Court, a mistrial was declared by the presiding Judge, the Honorable T. Hunt Mayfield, on February 7, 1974, based upon the inability of the jury to reach a unanimous verdict after lengthy deliberations. A retrial of those cases has been scheduled in the Circuit Court for Howard County for February, 1975, at which time it is anticipated that the

plaintiff will again incur substantial costs incident to providing individual counsel and legal defense to Wareheim in the continuing defense of the various third party claims against him.

### STATEMENT OF THE CASE

Plaintiff, therefore, has filed the instant action seeking a declaration of its rights under its insurance contract with the defendant. Specifically, it seeks to have this Court enter a declaratory judgment finding that Wareheim is not a fellow employee of the claimants in the personal injury actions now pending in the Circuit Court for Howard County. It further seeks to have this Court declare that the defendant insurer is not excused by any provision in the insurance contract from providing a legal defense to Wareheim, its agent and servant, with respect to those claims.

Pursuant to the entry of such a declaratory judgment, plaintiff requests that this Court enter a judgment in its favor against the defendant for all the costs and damages sustained by it in providing Wareheim with a legal defense against the third party claims of Plotkin's. Finally, plaintiff asks that the costs of these proceedings, and reasonable counsel fees incident thereto, be assessed against the defendant.

The defendant denies that it was obligated to provide a defense to Wareheim against any of the pending third party claims. Therefore, it requests that this Court enter a declaratory judgment finding that Wareheim was not an insured under the provisions of its policy with the plaintiff with respect to the pending personal injury and/or wrongful death actions, and that it was not required to provide him with a legal defense in connection with any of the pending third party claims. Furthermore, it requests that the costs of these proceedings be assessed against the plaintiff.

The parties have stipulated that if this Court should find that the defendant had a duty to provide Wareheim with a legal defense and assistance of counsel in any capacity pursuant to the aforesaid contract of insurance, this Court should order as further supplementary relief that the defendant undertake through counsel to provide, or otherwise reimburse counsel so providing, a legal defense to Wareheim with respect to the third party claims to be retried in the Circuit Court of Howard County beginning in February, 1975.

The essential question, therefore, is whether the defendant insurer had an obligation under the terms of its policy of insurance to provide a legal defense to Wareheim, the plaintiff's agent and servant, with respect to any of the third party claims filed by Plotkin's. In Transamerica Ins. Co. v. Brohawn, 23 Md.App. 186, 192, 326 A.2d 758, 765 (1974), the Court of Special Appeals of Maryland restated the general rule in Maryland "that the remedy of declaratory judgment is appropriate for the purpose of construing an insurance policy and determining the rights and obligations of insurer and insured under its provisions. World Insurance Co. v. Perry, 210 Md. 449, 452, 124 A.2d 259, and cases cited therein." Therefore, inasmuch as there is no controversy as to the facts, the question posited is now ripe for resolution on the parties' cross-motions for summary judgment. Fed. R.Civ.P. 56.

### CHOICE OF LAW

■ At the outset, brief consideration must be given to the choice of law which is to be applied. Where jurisdiction is conferred upon this Court by reason of the diverse citizenship of the parties, this Court must look to the law of the state in which it sits, including its conflicts-of-law rules, in order to determine what law is applicable. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■■ In Maryland it is well established that "the law of the place of contracting determines the validity and effect of a promise with respect to the na-

ture and extent of the duty for the performance of which a party becomes bound." Mackubin v. Curtiss-Wright Corp., 190 Md. 52, 57, 57 A.2d 318, 321 (1948). Furthermore, the Court of Appeals of Maryland has stated that "[t]he *locus contractus* is the place where the last act is performed which makes an agreement a binding contract." Grain Dealers Mut. Ins. Co. v. Van Buskirk, 241 Md. 58, 65–66, 215 A.2d 467, 471 (1965); Sun Insurance Office, Ltd. v. Mallick, 160 Md. 71, 81, 153 A. 35, 39 (1931). Thus, where the contract of insurance provides, as it does in the instant case, that it shall not be binding until countersigned by a duly authorized representative of the insurance company, the place of countersigning is the place of the making of the contract. Ohio Casualty Ins. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co., 238 F.Supp. 706, 708 (D.Md.), aff'd, 352 F.2d 308 (4th Cir. 1965) (*per curiam*); Ohio Casualty Ins. Co. v. Ross, 222 F.Supp. 292, 295 (D. Md.1963). The contract of insurance in this case, which is attached as Exhibit A to the agreed stipulation of facts, reflects that it was countersigned by the defendant's duly authorized representative in Maryland, Stump, Harvey & Co., Inc. It is, therefore, manifestly clear that the construction of this contract is to be governed by the law of Maryland.

## DUTY TO DEFEND

Under most policies of automobile liability insurance, the insurer assumes a duty to defend the insured against any actions brought against him on the allegation of facts and circumstances covered by the policy, even though such actions may be groundless, false or fraudulent. 44 Am.Jur.2d, Insurance § 1535, 414–415 (1969). *See generally* Comment, The Insurer's Duty to Defend Under a Liability Insurance Policy, 114 U.Pa.L.Rev. 734 (1966). This duty to defend is entirely separate and distinct from, and not dependent upon, the insurer's liability to pay, *see* Annotation, 50 A.L.R.2d 458, 475–480 (1956), although the two are ultimately related in that both are dependent upon the basic scope of coverage under the policy. *See* American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 280 F.2d 453, 458 (5th Cir. 1960). Thus, an unjustified refusal by the insurer to properly carry out that duty constitutes a breach of contract subjecting it to liability for any damages suffered by the insured as a result thereof, Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Messenger, 181 Md. 295, 300–301, 29 A.2d 653, 656–657 (1943); Anderson & Ireland Co. v. Maryland Casualty Co., 123 Md. 67, 70, 90 A. 780, 781–782 (1914), including any attorney's fees incurred by the insured in bringing a declaratory judgment action to establish the insurer's breach, Cohen v. American Home Assurance Co., 255 Md. 334, 350–363, 258 A.2d 225, 233–239 (1969); Transamerica Ins. Co. v. Brohawn, *supra,* 23 Md.App. at 204–206, 326 A.2d at 769–770. *See generally* Annotation, 49 A.L.R.2d 694 (1956).

Inasmuch as the duty to defend is a contractually assumed obligation, it is necessary to examine the precise language of the contract in question in order to determine the full scope of the insurer's obligations. *See* United States Fidelity & Guaranty Co. v. National Paving & Contracting Co., 228 Md. 40, 50, 178 A.2d 872, 876–877 (1962). Part II of the instant contract provides in pertinent part as follows:

II *Defense, Settlement, Supplementary Payments.* With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent;

. . . . .

A careful reading of this provision reveals that there are two condi-

tions precedent to the defendant's having a duty to defend any particular action: first, the suit must allege a claim with respect to such insurance as is provided by the policy for either bodily injury liability or property damage liability; and second, the suit must be one against the "insured." Thus, the insurer has no obligation to defend any action based on a claim which is not covered by the policy, 7A Appleman, Insurance Law and Practice, § 4684, 448–449 (1962), and whether or not a claim is covered by the policy is usually determined by the allegations of the complaint or petition in such action. *See* Annotation, 50 A.L.R. 2d 458 (1956). Similarly, the insurer has no obligation to defend any action which is not against the "insured" as that term is defined by the omnibus insured clause of the contract.

Therefore, in order to determine whether the defendant, in fact, had an obligation to defend Wareheim against any of the pending third party claims by Plotkin's, it is necessary to examine those claims to see if they meet the above prerequisites. In this regard, it should be noted that the claims against Wareheim fall into two different categories: first are those claims involving bodily injury liability arising out of the personal injury/wrongful death actions filed by the various injured firefighters and by the widow of the deceased firefighter, John Balcer; and second is that claim involving property damage liability arising out of the action filed by Fidelity, in the name of Riviera Beach, in connection with its subrogated claim for the repair of the latter's fire engine.

### PERSONAL INJURY LIABILITY CLAIMS

With respect to the personal injury/wrongful death actions, there is no dispute that the various third party complaints allege claims within the coverage of the policy for bodily injury

liability.[5] The dispute rather is as to whether or not Wareheim is an "insured" with respect to those claims.

Although Wareheim was acting as the agent, servant or employee of Riviera Beach at the time of the accident, that fact alone does not automatically entitle him to coverage under the latter's insurance contract. He is only entitled to coverage under that contract if he qualifies as an additional insured under the contract's omnibus insured clause. That provision, Part III of the instant contract, provides in pertinent part as follows:

### III *Definition of Insured*

(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured and . . . also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured . . . or with the permission of [the named insured].

Down to this point Wareheim would qualify as an additional insured under the contract since, as the regular driver of the fire engine, he was a person using the insured vehicle with the express permission of the named insured, Riviera Beach. However, the definition goes on to impose a qualification commonly referred to as the "fellow employee exception":

The insurance with respect to any person or organization other than the named insured . . . does not apply:

. . . . . .

(2) to any employee with respect to injury to or sickness, disease or death of another employee of the

---

5. *Coverage A—Bodily Injury Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer.

It is the defendant's position that this exception excludes Wareheim from being considered an "insured" under the policy with respect to the personal injury claims. The plaintiff argues, however, that Wareheim was not a fellow employee of the claimants in the various pending personal injury actions, and furthermore, that even if he was, it is apparent that, looking to the allegations of the complaints, the third party claims against Wareheim do not constitute "suits between fellow employees."

With respect to the plaintiff's first argument, this Court is of the opinion that Wareheim was a fellow employee of the claimants in the pending personal injury cases, whether the common employer be viewed as Anne Arundel County[6] or Riviera Beach. Thus, both Wareheim and Balcer were employees of Anne Arundel County. Furthermore, under the Maryland Workmen's Compensation Act., Md.Ann.Code art. 101, § 34(a) (Cum.Supp.1973), the injured volunteer firefighters were also considered employees of Anne Arundel County for purposes of recovery under that Act with respect to injuries incurred while actually on duty,[7] and, as has already been previously noted, they have all received, or are continuing to receive, compensation benefits from the County's compensation carrier.

While there are no Maryland cases precisely on point, this Court is of the opinion that if a person is considered as being an employee of another for purposes of the state Workmen's Compensation Act, he should also be so considered for purposes of determining the applicability of exclusionary provisions in an insurance contract. *See generally* Annotation, 45 A.L.R.3d 288, 298–301 (1972). In Travelers Corp. v. Boyer, 301 F.Supp. 1396 (D.Md.1969), Judge Kaufman of this Court was faced with a somewhat similar problem in determining whether two employees were "acting in the scope of their employment" within the meaning of the exclusionary clauses of the insurance contract. In resolving that problem, he adopted the reasoning of the Court in Lumber Mutual Casualty Ins. Co. of New York v. Stukes, 164 F.2d 571, 574 (4th Cir. 1947) (applying South Carolina law), and held that the determination under the state Workmen's Compensation law that an employee was acting within the scope of his employment was determinative as to that question in ascertaining the applicability of the exclusionary clauses in the contract. Travelers Corp. v. Boyer, *supra*, 301 F.Supp. at 1404. Thus, all of the injured firefighters, including Wareheim, could be viewed as having been employees of Anne Arundel County.

Moreover, it is apparent that they could also be viewed as having been employees of Riviera Beach. Thus, the various volunteer firefighters, although

---

**6.** It is not necessary that the common employer be the named insured. Bevans v. Liberty Mutual Ins. Co., 356 F.2d 577, 580–581 (4th Cir. 1966).

**7.** Md.Ann.Code art. 101, § 34(a) (Cum. Supp.1973) provides in pertinent part as follows:

(a) *When volunteer firemen and rescue squadmen deemed workmen and engaged in extra-hazardous employment in certain counties.*—All members of all volunteer fire companies in . . . Anne Arundel . . . count[y], . . . while actually on duty as firemen . . . and as members of such volunteer fire companies

. . ., shall be deemed workmen for wages and engaged in extra-hazardous employment within the meaning of this article. All such members shall be deemed to be on duty within the meaning hereof whenever they are (a) fighting a fire or while engaged as members of any ambulance, first aid, or rescue squad created within such fire companies; or (b) performing work or duties assigned to them by such companies or squads or by the written bylaws or rules of government adopted for such companies or squads; or (c) going to or returning from the performance of any of the foregoing. . . .

serving without pay, were acting as the agents, servants and employees of Riviera Beach at the time of the accident. Furthermore, Balcer and Wareheim, although formally employed by Anne Arundel County, had been loaned to Riviera Beach and thereby became its agents, servants and employees while acting under its exclusive control. Malisfski v. Indemnity Ins. Co. of North America, 135 F.2d 910, 912–914 (4th Cir. 1943). The plaintiff's first argument is, therefore, without merit.

 The plaintiff goes on to argue, however, that looking to the allegations of Plotkin's third party complaints against Wareheim, it is readily apparent that they do not represent "suits between fellow employees" and that they are based on an entirely separate theory or cause of action (indemnification or contribution) from that alleged in the actions against Plotkin's (negligence). In support of this argument, plaintiff points to the fact that none of the original plaintiffs ever amended their declarations to include Wareheim as a named defendant.

The problem with plaintiff's argument is that it reflects a basic misconception of the defendant's position and of the scope of the fellow employee exception. While it is true that most of the cases involving the exception have arisen out of actions directly between fellow employees, and while some authorities have referred to it as the "cross-employee exception," see, e. g., Annotation, 45 A.L.R. 3d 288, 293 (1972), the clause is not limited in its application to suits directly between fellow employees. This is apparent from the language of the exception itself which provides that "the insurance with respect to any person or organization other than the named insured . . . does not apply: . . . (2) to any employee *with respect to* injury to . . . or death of another employee of the same employer." (Emphasis added.) The phrase "with respect to" indicates that the exception encompasses any suit alleging damages arising out of an "injury to . . . or death of anoth-

er employee of the same employer," whether that suit is between two co-employees or between one employee and any other person trying to recover damages in connection with an injury to, or the death of, a fellow employee of the person being sued. For the exception to be confined to the more narrow framework which the plaintiff suggests, some more restrictive language would have had to have been employed, for it is well settled in Maryland "that in interpreting insurance contracts, words are to be given their customary and normal meaning." Neuman v. Travelers Indemnity Co., 271 Md. 636, 641, 319 A.2d 522, 524 (1974); C & H Plumbing and Heating, Inc. v. Employers Mutual Casualty Co., 264 Md. 510, 511, 287 A.2d 238, 239 (1972); Government Employees Ins. Co. v. DeJames, 256 Md. 717, 720, 261 A.2d 747, 749 (1970).

In Bevans v. Liberty Mutual Ins. Co., Civil No. 15233 (D.Md., decided February 8, 1965) (oral opinion), aff'd, 356 F.2d 577 (4th Cir. 1966), this Court had prior occasion to consider the validity and scope of the identical exclusion involved here. In that case Bevans sought a declaratory judgment that the defendant insurer was obligated under the terms of its policy with Arlington Bronze and Aluminum Corporation to pay a prior judgment which he had obtained against the driver of the insured vehicle in connection with certain personal injuries which he had received while riding as a passenger in that vehicle. Since both Bevans and the driver were employees of the same employer, Danko Pattern & Manufacturing Company, to whom Arlington Bronze and Aluminum had lent the insured vehicle for use in its business, the defendant, citing the fellow employee exception, argued that it was not obligated to pay that judgment, and it requested this Court to enter summary judgment in its favor. After full consideration of the contentions of both parties, this Court found the fellow employee exception to be valid and held that it barred the plaintiff from obtaining the relief sought, even

though the common employer was not the named insured.

In affirming the judgment of this Court, the United States Court of Appeals for the Fourth Circuit reviewed the background of the fellow employee exception and stated that it found its provisions to be clear and explicit and not contrary to the public policy of Maryland. Bevans v. Liberty Mutual Ins. Co., 356 F.2d 577, 579–581 (4th Cir. 1966). While *Bevans* did arise out of an action which was directly between two employees, the Court's construction of the clause was not limited to such circumstances. Thus, the Court construed the clause in the following language:

> In more precise terms the clause simply means that if you cause injury to your fellow-employee you cannot call for protection as an additional insured. Certainly there is nothing ambiguous or misleading in such a statement. [*Id.*, 356 F.2d at 581.]

More directly on point is the case of National Union Fire Ins. Co. of Pittsburgh v. Aetna Casualty & Surety Co., 127 U.S.App.D.C. 364, 384 F.2d 316 (1967), which arose out of a collision between a truck owned and operated by American Ice Company and an ambulance owned by W. W. Chambers Company. Subsequent to the accident, the driver of the ambulance, Delbert J. Scott, and Harvey P. Walker, a fellow employee riding in the ambulance as an attendant, filed independent personal injury actions against American Ice. In a move identical to that employed by Plotkin's in the instant action, American Ice filed a third party complaint against Scott seeking contribution on the theory that he, as the driver of the ambulance, was jointly liable with the driver of the truck for Walker's injuries. Those actions eventually culminated in judgments for Walker against American Ice in the amount of $60,000, and for American Ice in the amount of $30,000 as contribution against Scott. Having satisfied the judgment in favor of Walker against its insured, American Ice, Aetna initiated an attachment proceeding against Scott's employer's insurer, National Union Fire Insurance Company of Pittsburgh, following the latter's refusal to pay the judgment against Scott.

National Union, adopting the same line of defense as that urged by Fidelity in the instant action, argued that the fellow-employee exception in its insurance contract with Scott's employer barred Scott from being considered an insured under that contract with respect to any action arising out of the injuries sustained by Walker, his fellow employee. That case differed from the instant action, however, in that National Union had actually undertaken to provide Scott with a legal defense against the third party complaint. The Court, therefore, held that, having once undertaken to provide a defense, National Union was thereafter foreclosed from taking refuge in the policy provisions excepting the liability from .coverage. In dictum which is particularly relevant to the instant case, however, the Court noted that:

> [h]ad appellant refrained from entering upon Scott's defense in the third-party action, the exclusionary clause undoubtedly would have eliminated any liability it might otherwise have incurred under the policy. [*Id.*, 384 F.2d at 318.]

It is thus clear that under the provisions of the fellow-employee exception of its contract with Riviera Beach, Fidelity was not obligated to defend Wareheim with respect to any action alleging damages as the result of an injury to, or death of, any of his fellow employees. Moreover, the decision in National Union Fire Ins. Co. of Pittsburgh v. Aetna Casualty & Surety Co., *supra*, makes evident the risks which Fidelity would have assumed had it undertaken to defend Wareheim against a claim which it was not otherwise obligated to defend.

The plaintiff argues, however, that the defendant still should be obliged to undertake Wareheim's defense since the causes of action in the third party complaints against Wareheim are substantively different from those alleged in the

original declarations against Plotkin's. Thus, while the original claims against Plotkin's were based on a theory of negligence, the later third party claims were based on a theory of contribution or indemnification. In support of this contention the plaintiff cites Kipka v. Chicago & Northwestern Ry., 289 F.Supp. 750 (D.Minn.1968), in which it was held that an insurer had a duty to defend its insured against a third party complaint which was in the nature of an indemnity action. However, that holding arose out of the Court's finding that the third party actions appeared to be based on a theory of breach of implied warranty, *id.*, 289 F.Supp. at 757–758, and the Court went to considerable lengths to distinguish the situation before it from one where the third party complaint was based solely on tort liability and common law indemnification. Thus, the Court stated that:

> . . . where courts have found implied contractual obligations of indemnification between the third party and the employer, *as distinguished from mere tort liability*, they have required the insurer to defend the employer in the third-party action. [*Id.*, 289 F. Supp. at 756.] [Emphasis added.]

In this regard, the Court took particular notice of the decision in Hackensack Water Co. v. General Accident Fire and Life Assurance Corp., 84 N.J.Super. 479, 202 A.2d 706 (App.Div.1964), which held that an insurer was not obligated to defend a third party claim for common law indemnification against the insured-employer brought after the third party had been sued by an employee of the insured for injuries sustained in the course of his employment. In so holding, the Court in that case had pointed out that:

> [t]he third-party complaint was not based on Hackensack's alleged assumption of liability by contract but rather on the allegation that the injuries to Jansen were caused by the sole, or primary, negligence of Hackensack, and that either Vergona was not negligent or any negligence on its part

was secondary in character, resulting in a right to indemnification as a matter of common law. [*Id.*, 202 A.2d at 707.]

After a discussion of that decision, the Court in *Kipka, supra,* continued as follows:

> If this case were to be followed it may well be that where there is a third-party claim sounding solely in tort (based either on the right to contribution or on the right to indemnification because of the primary negligence of the employer), the insurer has no obligation to defend under an exclusion for injuries to employees arising out of their employment. [*Id.*, 289 F. Supp. at 755.]

In the instant action, a reading of the third party complaints filed by Plotkin's against Wareheim makes it apparent that, similar to the third party claims in *Hackensack Water Co., supra,* they are based not on any alleged assumption of contractual liability (or even implied warranty, as in *Kipka, supra*) by Wareheim, but rather on the allegation that the injuries to the various plaintiffs were caused by the sole, or primary, negligence of Wareheim, and that either Plotkin's was not negligent at all or that any negligence on its part was only secondary in character.

Construing Plotkin's third party complaints in light of the original declarations filed against it, Harvey Wrecking Co. v. Certain Underwriters at Lloyd's London, 91 Ill.App.2d 449, 335 N.E.2d 385, 387 (1968); *Hackensack Water Co., supra,* 202 A.2d at 708, it is apparent that they fail to allege any legally distinguishable cause of action from that alleged in the original declarations. Had the original plaintiffs filed a direct suit in negligence against Wareheim, he clearly would not have been an insured with respect to that claim, Bevans v. Liberty Mutual Ins. Co., *supra,* and Fidelity would have been under no duty to defend him with respect to such action. In substance, the third party complaint by Plotkin's seeks to accomplish the

same result by substituting Wareheim as the real party defendant in the original plaintiffs' actions. Fidelity consequently was under no obligation to defend Wareheim with respect to those claims. *Harvey Wrecking Co., supra; Hackensack Water Co., supra*; Morris v. State Farm Mutual Automobile Ins. Co., 50 Tenn.App. 233, 360 S.W.2d 776 (1960). *Cf.* McCabe v. Old Republic Ins. Co., 425 Pa. 221, 228 A.2d 901 (1967).

The plaintiff finally suggests that there is some apparent conflict between the defendant's decision to defend Riviera Beach against the allegations of Plotkin's counterclaim while continuing not to defend Wareheim who is named in the counterclaim as Riviera Beach's agent, servant and employee. However, under the terms of its policy, Fidelity had little choice but to defend Riviera Beach. In contrast to the situation with respect to Wareheim, there is no applicable exception in the contract which would have excused the defendant from providing a defense to the named insured.[8] Thus, in Boston Ins. Co. v. Maddux Well Service, 459 P.2d 777 (Wyo. 1967), the Supreme Court of Wyoming held that the insurer was not excused from providing a defense to Maddux, *the named insured*, in connection with a third party complaint filed by a defendant in an action originated by several of Maddux's employees who had been injured during a fire at the defendant's oil well. The case is not authority for granting the relief sought by plaintiff.

While it is normally true that in defending a principal against a claim based on the doctrine of *respondeat superior* one would also undertake to defend the agent for whose actions the principal is alleged to be liable, that is

not to say that such a course is mandated. In the instant action the defendant suggests that there are several defenses, related to the payment of workmen's compensation benefits, which would be available to Riviera Beach as principal, and not to Wareheim, and which would shield it from liability even if Wareheim was to be held individually liable. Of course, if the defendant is wrong in that respect, its decision not to defend Wareheim could ultimately prove to be a costly one. That question is not, however, before this Court at this time.

## PROPERTY DAMAGE LIABILITY CLAIM

■ In contrast to the personal injury liability claims, it is undisputed that Wareheim was an additional insured under the terms of the omnibus insured clause of the instant contract with respect to Plotkin's third party complaint arising out of Fidelity's subrogated property damage liability claim.[9] The question with respect to that complaint is whether it alleges a claim within the scope of the insurance provided by the policy.

The property damage liability coverage provision of the instant contract provided as follows:

*Coverage B—Property Damage Liability*. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile.

This provision would seem on its face to encompass the subject claim involving damages to the insured vehicle itself

---

8. In this regard it should be noted that the exceptions contained in the omnibus insured clause of the instant contract only apply to those persons otherwise qualifying as additional insureds under the contract, and not to the named insured.

9. In contrast to the situation with respect to the bodily injury claims, there is no applica-

ble exception which would exclude Wareheim from being an additional insured under the policy. Thus, as a person driving the insured vehicle with the permission of the named insured, he was an insured with respect to these claims.

caused by an accident and arising out of its use. However, the policy subsequently goes on to provide that:

This policy does not apply:

.　　.　　.　　.　　.　　.

(f) under coverage B, *to injury to* or destruction of *property owned or transported by the insured,* or property rented to or in charge of the insured other than a residence or private garage injured or destroyed by a private passenger automobile covered by this policy[.] [Emphasis added.]

Under the terms of that exclusion it is apparent that the coverage of the policy for property damage liability does not encompass any claim for injury to the insured vehicle which was "property owned . . . by the insured," Riviera Beach. The third party complaint by Plotkin's in that regard, therefore, does not state a claim which could be considered even arguably within the scope of the subject policy. *Cf.* United States Fidelity & Guaranty Co. v. National Paving & Contracting Co., *supra,* 228 Md. at 54–55, 178 A.2d at 878–879. Fidelity thus was under no duty to provide Wareheim with a defense to that complaint.

## CONCLUSION

For the reasons set forth herein, the defendant did not have any obligation under the terms of its insurance contract with Riviera Beach to provide Wareheim with a legal defense in connection with any of the third party claims by Plotkin's. While this result may seem somewhat harsh for Wareheim, "[a] policy of insurance is a contract, and, in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement." Aviation Employees Ins. Co. v. Barclay, 237 Md. 318, 323, 206 A. 2d 119, 121 (1965). Here, the parties clearly contracted as to the circumstances under which Fidelity would be liable and/or have a duty to defend, and this Court "may not make a new contract under guise of construction." Of-

futt v. Liberty Mutual Ins. Co., 251 Md. 262, 270, 247 A.2d 272, 276 (1968).

Fidelity is therefore entitled to the summary declaratory relief it seeks. Counsel will prepare an appropriate order and submit it to this Court for approval.